## THOMAS *v*. CROOM.

### Opinion delivered January 15, 1912.

1. FRAUDS, STATUTE OF—AGREEMENT NOT TO BE PERFORMED WITHIN YEAR.—An agreement for a lease of land for a year, to begin at a future date, whose consideration, in part, was an agreement of the lessees to make certain improvements and do certain work upon the land, during the lease, though not in writing, does not fall within the statute of frauds. (Page 111.)

2. APPEAL AND ERROR—HARMLESS ERROR—INSTRUCTION.—The error of instructing the jury, in an action on contract, on the issue as to whether the contract was within the statute of frauds was not prejudicial where the jury found that an enforceable contract existed between the parties. (Page 112.)

3. LANDLORD AND TENANT—COVENANT—BREACH.—In a contract of lease there is an implied covenant that the demised premises shall be open to entry to the lessee at the time fixed in the lease for the beginning of the term; and if the lessee is prevented from obtaining possession by some one else holding the premises, the covenant is broken, and the lessee entitled to recover damages. (Page 112.)

4. SAME—BREACH OF COVENANT—DAMAGES.—The measure of damages for breach of an implied covenant for possession in a contract of lease is the difference between the fair rental value of the demised premises and the rental price named in the lease; and where the rental value is not proved, the lessee can recover only nominal damages. (Page 113.)

Appeal from Yell Circuit Court, Dardanelle District; *Hugh Basham,* Judge; affirmed.

*U. L. Meade,* for appellant.

Plaintiff's demurrer to defendant's answer should have been sustained. 65 Ark. 604; 19 Ark. 23; *Id.* 39. If the consideration to be paid is entire and single, then the contract must be held to be entire. 52 Ark. 257; 59 Pa. St. 420; 5 Gray 492; 2 Cush. 1. The contract was not within the statute of frauds. 91 Ark. 149; 37 Kan. 437; 15 Pac. 586; 48 Ill. App. 140; 50 N. Y. Sup. Ct. 63; 8 Ohio Dec. 219. The measure of damages is the difference between the price to be paid and the actual value of the land at the time of the breach. 3 Suth. Dam., pp. 149. 150; 4 Seld. 115; 42 Ark. 257.

*Bullock & Davis,* for appellee.

The measure of damages in such cases is the difference between the rent reserved and the value of the premises at the time of the breach. 42 Ark. 257; 63 S. E. 1037; 21 L. R. A. (N. S.) 239; 59 Ia. 572; 13 N. W. 714; 88 S. W. 981; *Id.* 822; 46 So. 642; 79 Ala. 452; 58 Am. R. 601; 8 S. E. 58; 45 Ill. 205; 29 S. W. 358; 20 Ia. 238; 8 N. Y. 115; 128 S. W. 530; 109 N. W. 383; 98 Tenn. 440; 39 S. W. 724; 36 L. R. A. 862; 29 W. Va. 765; 2 S. E. 827; 111 N. W. 359; 57 Conn. 480; 5 L. R. A. 572. A recovery of damages based on profits that others in the same business have made at the same time and place will be denied. Joyce on Dam., p. 1908; 72 Ga. 280; 120 Wis. 314; 97 N. W. 952.

FRAUENTHAL, J. This was an action instituted by appellants to recover damages for the breach of an alleged contract leasing to them certain lands in Yell County for the year 1910.

In their complaint appellants alleged that the appellee, by verbal contract, had leased to them said land for a term of one year beginning January 1, 1910, for which they agreed to pay $7 per acre for the rent thereof, and that appellee had failed and refused to deliver the possession of said land to them on said January 1, 1910, or on any day thereafter, although requested and demanded so to do. They alleged that by reason of the breach of said contract they were damaged in the sum of $5,000, for which they asked judgment. The appellee denied that an unconditional contract for the lease of said land had been made, and also pleaded the statute of frauds in bar of the action upon the ground that the alleged contract of lease and improvement of the land rested in parol and was not to be performed within one year next after making same. Upon the trial of the case, the jury returned a verdict in favor of the appellants, assessing their damages at $1. From the judgment rendered thereon, both parties have appealed to this court.

It appears from the testimony that the land in question had been rented to one Allen Brasher during the year of 1909, and that he was in possession thereof at the time the alleged lease contract was entered into between the appellants and appellee. There is a conflict in the testimony as to the terms of said alleged contract. On the part of appellants, the testimony tended to prove that in September, 1909, the parties entered into a parol contract whereby the appellee leased to appellants said land for a term beginning on January 1, 1910, and continuing for one year thereafter, and that appellants were to pay the sum of $7 per acre for the rent thereof. It was also agreed that appellants should make certain improvements upon the land in event the appellee should desire them to do so, and that he would pay therefor a price which would be subsequently agreed upon. On the other hand, the testimony on the part of the appellee tended to prove that he leased said land to appellants only upon condition that he should obtain possession thereof from said Brasher; that on January 1, 1910, said Brasher refused to surrender possession of the land, and he thereupon instituted an action of unlawful detainer against him in order to obtain possession thereof, but that he was unsuccessful in that litigation. No special damages were alleged in the complaint, and none were proved by the appellants,

and it was conceded by both parties that $7 per acre was the usual and customary price for the rent of the same character of land in the locality where the land in controversy was situated at the time the contract was entered into and the term was to begin. There was no testimony introduced or offered tending to show the rental value of this land during the year of 1910. The appellants offered to prove by the witness Brasher the following: "That he cultivated the land in controversy during the year 1910, and raised from said land 49 square bales of cotton and nine round bales, and sold all but three square bales all the way from 13 to 14¾ cents a pound, averaging a little above 14 cents; and produced about $12 per bale of seed; and that he paid the landlord $7 per acre rent for the land; and rented 24 acres of said land for money rent at $180, which he has collected; and, after paying said rent and cost of production and gathering of the crop, made a profit on said land of $2,211.50." Objection was made to the introduction of this testimony, and said objection was by the court sustained.

It is urged by counsel for appellants that the judgment should be reversed because the court erred in its rulings relative to certain instructions and in its refusal to permit the introduction of the above testimony. The appellee in his cross appeal urges that the judgment should be reversed, in so far as it adjudged nominal damages and costs against him, because the alleged parol contract of lease was within the operation of the statute of frauds. It is contended by counsel for appellee that the alleged contract of lease, according to the testimony most favorable to appellants, was entire and indivisible; that a part of the consideration thereof consisted in the agreement of appellants to make certain improvements and to do certain work upon the land, and that this was not to be performed in one year from the making of the contract; that for this reason the parol contract fell within the statute of frauds, and no action could be maintained thereon. The contract was entered into in September, 1909, and while the term of the lease was to begin on January 1 following, and continue for one year thereafter, there was no definite time named for the performance of the promise for making improvements and doing the work on the land if that portion of the agreement was an indivisible part of the contract. A parol agreement to

do some act or to perform some service which fixes no definite time for its performance does not fall within the statute of frauds where, in view of the subject-matter of the contract and the understanding relative thereto, it is capable of full performance within one year after the making thereof. In the case at bar, no definite time was agreed upon within which the improvements were to have been made or the work to have been done, and they might have been performed within one year after the making of such contract. We are of the opinion, therefore, that the alleged contract herein sued on, although not in writing, did not, under any view of the testimony, fall within the operation of the statute of frauds. *Sullivan* v. *Winters,* 91 Ark. 149; *Higgins* v. *Gager,* 65 Ark. 604. We do not think that the instruction given by the court, submitting to the jury the question as to whether or not the alleged contract was enforceable because within the statute of frauds, was prejudicial to the appellants, for the reason that the jury returned a verdict in their favor. The jury, therefore, found that a subsisting and legally enforceable contract did exist between the parties relative to the lease of said land and, therefore, was not required to be in writing. The verdict of the jury, as far as the rights of appellants are concerned, was therefore not affected by any instruction given by the court relative to the statute of frauds, and for this reason the appellants were not prejudiced by any such instruction, even if it was erroneous.

Counsel for appellants earnestly contend that the court erred in refusing to allow the introduction of the above testimony relative to the amount of profit that was made by the occupying tenant on said land during the year of 1910, and also in giving to the jury the following instruction: "Gentlemen of the jury, you are instructed that if you find for the plaintiffs you can only find nominal damages." The question raised by this contention is, what is the measure of damages to which a lessee is entitled upon a breach of a contract of lease by the lessor in failing or refusing to give possession of the land? There is some conflict in the authorities as to the duties devolving upon the lessor to give possession of the demised premises to the lessee. In some courts it is held that when the lessor has given to the tenant the right of possession he has done all he is required to do as against third persons withholding pos-

session who do not claim under a prior or superior right derived from the lessor. These courts hold that, if the lessee is prevented from taking possession of the demised premises by a third person wrongfully holding same, it is solely his duty to oust such wrongdoer. We are of the opinion, however, that by virtue of a lease contract there is an implied covenant that the demised premises shall be open to entry to the lessee at the time fixed in the lease for the beginning of the term, and that if the lessee is prevented from obtaining possession by some one holding the premises then such covenant is violated, and the lessee is entitled to recover from the lessor the damages which may be sustained by him. This is the rule which has been adopted by this court. *Rose* v. *Wynn,* 42 Ark. 257.

The measure of damages for the breach of this implied covenant for possession is the difference between the rental value of the demised premises and the rental price named in the lease, together with such special damages as have necessarily resulted from such breach. The rule is thus stated in the case of *Rose* v. *Wynn, supra*: "In an action by a lessee against his lessor for damages for refusal or failure to deliver possession of the demised premises, the general rule for the measure of damages is the difference between the rent reserved and the value of the premises for the term; and if this value be not greater than the rent reserved, the lessee can in general recover only nominal damages, though the lessor without just cause refused to give possession. But if other damages have resulted as the direct and necessary or natural consequence of the lessor's breach of contract it seems that they, also, are recoverable." By "the value of the premises" used in the above opinion is meant, not the probable profits that might accrue to the lessee, but what the evidence shows would be a fair rental value of the demised premises for the term. In that case the court reversed a judgment granting damages to a lessee for a breach of a covenant for possession in a lease, and therein said: "In this case appellee did not prove that the rental value of the demised premises was greater than the rent which he contracted to pay. Nor did he prove any actual special damages within the above rule." So in the case of *Andrews* v. *Minter,* 75 Ark. 589, this court held: "For breach of a contract of lease, the lessee is entitled to recover the difference between the price he agreed

to pay and the rental value, with interest, together with any actual expenses incurred." See also *McElvaney* v. *Smith,* 76 Ark. 468; *Young* v. *Berman,* 96 Ark. 78; *Cohn* v. *Norton,* 57 Conn. 480; *Adair* v. *Bogle,* 20 Ia. 238; *Alexander* v. *Bishop,* 59 · Ia. 572; *Sloan* v. *Hart* (N. C.) 21 L. R. A. (N. S.) 239. The probable profits to a lessee from the cultivation of demised land is not the true measure of his damages resulting from the breach of a covenant for possession, and can not be considered in determining the amount of such damages. *Smith* v. *Phillips* (Ky.) 29 S. W. 358. It follows that the court did not err in refusing to permit the introduction of the above testimony relative to what were the probable profits which were made upon the land during 1910 by the occupying tenant. It was in effect conceded by the parties upon the trial of this case, as is shown by the record, that the usual and customary price for the rent of the land ·in controversy for the term of the alleged lease was $7 per acre. This was the amount of the rent which was reserved in said alleged contract of lease. The appellants did not allege, nor did they prove or offer to prove, any special damages sustained by them by reason of the alleged breach of the contract. They did not prove or attempt to prove that the rental value of the land was greater than the rent reserved in the contract. It follows, therefore, that in view of the testimony which was adduced upon the trial of this case, and also of that which was offered, the appellants were not entitled to any greater damages than a nominal sum, even if there was an unconditional contract of lease made by the appellee to them of said land. Finding no prejudicial error in the trial of this case, the judgment must be affirmed.

HART, J., not participating.