# BERTRAM RICE

## vs.

## BILTMORE APARTMENTS COMPANY.

*Tenant Wrongfully Holding Over—Liability to Landlord—Damages for Breach of Covenant—Exclusion of Lessee—Costs of Eviction—Recovery of Attorney's Fees—Cost of Repairs—Review on Appeal—Prayer Ignoring Evidence—Special Objections.*

A bill of particulars, filed in response to the defendant's demand, as a statement of the particulars of all the counts, must, after the striking out of all but one of the counts, be regarded as applying to the count so remaining.          p. 510

The law presumes some injury from every breach of contract, and upon a breach an action immediately accrues to the injured party.          p. 512

For the violation, by the lessee of an apartment, of a covenant to deliver up the premises at the end of the term, the landlord could not claim both the value of the use and occupation of his premises by defendant while so holding over, and the value of the use and occupation of other premises by one who was prevented by defendant's act from obtaining possession of the premises so occupied by the latter.          p. 513

In the absence of some definite agreement, it cannot be assumed that the lessor of an apartment was in any way obliged to provide the lessee with a house rent free by reason of the lessee's inability to obtain possession of the apartment.          p. 513

A lessee who is prevented obtaining possession by reason of a wrongful holding over by a former tenant, may recover from the latter for any loss which he may have suffered as a natural and necessssary result of such wrongful act.          p. 513

The law does not imply a covenant on the part of a lessor to protect the lessee against a stranger or a mere trespasser wrongfully in possession, such as a tenant holding over after

the expiration of his term, but as to such wrongdoer it remits the lessee to the assertion and establishment in the proper forum of the title and right of possession granted to him under the lease.                                                                   p. 513

Since the lessee is entitled to recover from a stranger wrongfully holding the leased premises such damages as he may have suffered from the interference with his possession, the lessor cannot recover more than nominal damages for the breach by the previous tenant of a covenant to deliver up the premises at the expiration of the term.                                         p. 516

For the breach by a tenant of a covenant to **yield up** possession at the end of his term, the landlord, having made a lease to another to commence at that time, cannot recover as damages the cost of a proceeding begun by him to eject such former tenant, he having neither the right nor the title necessary to maintain such a proceeding.                           p. 516

In the absence of some statutory provision, a successful litigant is not entitled to recover the fees paid by him to attorneys for prosecuting the litigation.                                       p. 517

A landlord cannot recover, against a tenant who wrongfully held over, the cost of repairs to the property, made after such tenant's vacation thereof, without showing that the repairs were necessitated by reason of damage done during his occupation.                                                               p. 517

A count in the declaration which would have been sufficient if it had merely stated a covenant by defendant and a breach thereof, is vitiated by the insertion therein of claims for damages which could not be traced to such breach.                 p. 517

If the landlord elects to treat as a wrongdoer a tenant who wrongfully holds over, instead of treating the tenancy as a continuance or renewal of the lease, the tenant becomes liable for the use and occupation, not under the lease, but as one wrongfully in possession.                                        pp. 517, 518

In the absence of a special objection in the lower court, a granted prayer cannot be the subject of review as being predicated upon a contract which formed no part of the pleadings and was aside from any issue in the case.                        p. 518

Under a claim against a tenant wrongfully holding over for the fair value of defendant's use and occupation of the premises, evidence was admissible that plaintiff made the premises untenantable during the time that defendant occupied them after the term.                                                   p. 519

*Decided June 23rd, 1922.*

Appeal from the Baltimore City Court (STUMP, J.).

Action by the Biltmore Apartments Company against Bertram Rice. From a judgment for plaintiff, defendant appeals. Reversed.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*Lewis W. Lake,* for the appellant.

*Chester F. Morrow,* with whom were *Niles, Wolf, Barton & Morrow* on the brief, for the appellee.

OFFUTT, J., delivered the opinion of the Court.

This appeal was taken from a judgment of the Baltimore City Court in favor of the appellee for $236.45, in an action brought by it against the appellant for damages which it claimed resulted from the failure of the appellant to vacate an apartment which he had leased from the appellee's predecessor in title at the expiration of the term fixed by that lease.

The declaration originally contained the six common counts in assumpsit and a count in the nature of an action in covenant. Upon the defendant's demand a bill of particulars was filed, to which exceptions were sustained, and then an amended bill of particulars was filed, in connection with that *narr.* Exceptions were also filed to this bill, which were overruled, and after they were overruled, the plaintiff amended his declaration by striking out the common counts, leaving only the count in the nature of an action in covenant and to that count the defendant demurred. The demurrer was overruled, and the defendant filed the general issue pleas in

assumpsit, and on these pleas the plaintiff joined issue. So that the proceeding was treated by the parties as an action in assumpsit.

During the trial of the case the defendant noted eleven exceptions relating to rulings of the lower court which the record presents for review in this Court. Ten of these exceptions relate to matters of evidence and one to the court's rulings on the instructions.

The first question presented by the record which we are called upon to consider is whether what was in the original declaration called the seventh count set forth a good cause of action.

The amended bill of particulars, filed in response to the defendant's demand, applied to each count of the declaration, and although the common counts were stricken out, nevertheless, having been filed as a statement of the particulars of all the counts, it must be taken as applying also to the seventh, the only remaining count in the declaration. The amended bill of particulars reads:

> "Cash paid Isaac Hollins and wife, use and occupation of their house by Lewis Baer, for eighteen days at five dollars a day..... $90.00
> "Use and occupation by defendant of apartment at the Biltmore Apartment House for twenty-three days after the termination of his lease, at one hundred and twenty dollars ($120.00) per month..................  92.00
> "Expenses incurred putting demised property in good order and condition: Repairing broken plaster in bathroom and repainting same, and repairing damage to bathroom cabinet ......................  35.00
> "Costs in the People's Court in ejectment proceedings. ............................  4.45
> "Expenses incurred for counsel fee in recovering possession of the demised property..  150.00
>
> "Total claim ....................... $371.45."

And the seventh count of the *narr.* is in this form:

"And for that the defendant, by lease in writing, dated the twentieth day of February, 1917, covenanted with the Woodrow Realty Company, the lessor in said lease, to rent from the lessor an apartment in the Biltmore Apartment House for the term of three years, beginning on the first day of September, 1920, at and for the rent stipulated in said lease; and in the second paragraph of the express conditions named in said lease the said defendant covenanted 'at the end or other expiration of the term to deliver up the demised premises in good order and condition.' And the plaintiff says that by mesne assignments it acquired, on or about the twenty-sixth day of May, 1920, the right, title and interest of the lessor named in said lease. And the plaintiff further says that the defendant did not 'at the end or other expiration of the term, deliver up the demised premises in good order and condition,' to the great damage and injury of the plaintiff, in that the plaintiff was unable because of the *breach of covenant* of the defendant aforesaid to deliver the said premises to a certain Lewis Baer, to whom it had leased the same for a term of years *beginning on the first day* of October, 1920, whereby the plaintiff was put to great expense and injury *in providing other premises for the said Lewis Baer.* And the plaintiff was further put to great expense and damage in removing the defendant from the premises wrongfully held by him after the thirtieth day of September, 1920, and in repairing the premises occupied by said defendant after he had vacated the same, and for loss of rent of said premises."

The plaintiff in this count asks compensation for damages which it sustained from a failure of the defendant to perform a covenant contained in the lease under which he agreed to deliver up the premises in good order and condition at the end of the term. The items composing these damages fall into three classes, one of which embraces the expense

incurred by the plaintiff in securing an apartment for Baer, the new tenant, during the time Rice held over after the term, and the value of the property during the time Rice so held it; two, which includes expenses incident to the eviction of Rice; and a third, which includes expenses incurred in repairing the property; and the demurrer challenges the sufficiency of the declaration to justify a recovery for any of these losses or expenditures. The declaration in effect charges that the defendant made a certain contract or lease in which he made a definite and certain promise to deliver up the leased premises at the expiration of the term in good order, and that he broke that promise. These allegations standing alone state a cause of action, since they state a covenant and a breach thereof (*Bullen & Leake, Prec. Plead.*, 200), since the law presumes some injury from every breach of a contract, and upon a breach an action at once accrues to the injured party. 5 *C. J.* 1397; 15 *C. J.* 1318. The declaration in this case does not rest upon the mere statement of a covenant and the breach thereof, but sets forth in the same count various claims for damages, all of which should rest upon the alleged breach of the covenants of the lease.

Inasmuch as the legal principles applicable to the facts averred in the *narr.*, upon which the plaintiff relies in support of these claims, also control the plaintiff's right to recovery upon the evidence in this case, and limit and define the damages which he can recover in it, we will deal with those questions now.

Coming then to what may be referred to as the first item of the plaintiff's claim set out in the *narr.*, it contends that because Rice failed to deliver up the apartment, it, the appellee, could not deliver it to Baer, the tenant to whom it had leased it, and that it is entitled therefore to recover first the expenses incurred by it in procuring an apartment for Baer during the period that Rice held over after the expiration of the term of his lease, and second, for the use and occupation of its property for the time it was held by Rice after the end of the term.

If we assume that the statement substantially charges that the defendant violated a covenant to deliver up the premises in good order and condition, can the plaintiff recover for such losses in this action? In the first place there is nothing to explain why the plaintiff should be paid by the defendant for the use and occupation of the apartment which Baer occupied while Rice was holding the Biltmore Apartment, and also for the use and occupation of the apartment which he, Rice, occupied as a tenant holding over after the term. No contract to do that is alleged in the *narr.*, and in the absence of some definite agreement, it cannot be assumed that Rice was in any way obliged to provide Baer with a house rent free, or that the appellee was entitled to receive rent from both Baer and Rice, and yet it was entitled to receive rent from Baer under the terms of the lease to him from the first day of October, and so far as anything in the record to the contrary appears, it could have demanded such rent from Baer. In that case the only person injured by Rice's act would have been Baer, who had an undoubted right to recover from Rice for any loss he may have suffered as a natural and necessary result of Rice's wrongful act.

But aside from that, it affirmatively appears from the declaration that the plaintiff had leased the property to Baer from the first day of October, 1920, but it does not appear that he covenanted or agreed in that lease to put Baer in possession. Under these circumstances, while the law will imply a covenant to protect the tenant against a paramount title or against any one claiming under the lessor, it will not imply a covenant to protect the lessee against a stranger or a mere trespasser wrongfully in possession of the property, such as a tenant holding over after the expiration of his term, but as to such wrongdoer it remits the lessee to the assertion and establishment in the proper forum of the title and right of possession granted to him under the lease. The rule as thus stated is not universally approved, but it is, we think, supported by the weight of authority and has been accepted

by this Court. Mr. Tiffany, in his work on *Landlord and Tenant,* page 545, says: "A lessee who is kept out of possession by a third person who has no right to the possession, as when a previous lessee holds over after his term, has, by some decisions, a right to recover damages against his lessor, and it has been said, as justifying such view, that 'he who lets agrees to give possession, and not merely to give a chance of a law suit.' By other decisions he has no right of redress against the lessor in such case, it being for the lessee to obtain possession from the wrongdoer." And in 24 *Cyc.* p. 1146, it is said: "Where a lessee does not and cannot enter under his lease because debarred from doing so by the occupancy of the premises by another tenant with superior right, the former is not liable for rent. The occupancy of another, however, at the time of the letting, or afterward, is no answer by a lessee to a demand for rent unless the tenant is in possession under a title paramount to that of the lessor. * * * Where the lessee is prevented from obtaining possession of the demised premises by a former tenant whose tenancy has expired, the general rule is that he may bring an action of ejectment to recover possession of the premises, and in such action the lessor is not a necessary party."

A question very similar to the one involved here was before the Court in *Sigmund v. Howard Bank,* 29 Md. 324. In that case the bank leased certain premises to one Bialla for a term which expired on June 30th, 1860. During that term the bank leased the property to Sigmund for a term beginning July 1st, 1860. Bialla, however, wrongfully held over after his term had expired, whereupon Sigmund sued the bank for the violation of an implied covenant that the lessee should have the undisturbed possession of the premises for the term named in the lease. The trial court instructed the jury that if they found those facts the plaintiff could not recover and, in discussing that ruling, this Court said:

"From all the evidence disclosed by the record, we are satisfied that the plaintiff acquired by his lease a perfect title to the premises and a legal right of entry. He failed to ob-

tain possession in consequence of the wrongful act of Bialla in holding over after the term of his tenancy, and the law leaves him to his remedy against such a wrongdoer. The defendant has not covenanted against the wrongful acts of another, and he cannot be held responsible for them, unless he has fully and expressly so contracted. *Dudley* v. *Folliott,* 3 Term, 584; *Baugher* v. *Wilkins,* 16 Md. 45; *Platt on Cov.* 314.

"No authority has been referred to, nor have we been able to find any, which sustains the general proposition that under the implied covenants of a lease, the lessor is required to give the lessee possession. On the contrary, as said by NELSON, C. J., in *Gardner* v. *Keteltas,* 3 Hill, 330, 'Upon the well settled construction of the covenants of title and quiet enjoyment, it is not the duty of the landlord, when the demised premises are wrongfully held by a third person, to take the necessary steps to put his lessee into possession. The latter being clothed with the title by virtue of the lease, it belongs to him to pursue such legal remedies as the law has provided for gaining it, whether few or many.' "

And in *Gazzolo* v. *Chambers,* 73 Ill. 79, in dealing with a similar question, that court said: "But if the party holding over is a mere wrongdoer, the right of the lessee after the date fixed for the commencement of the tenancy is as effectual to dispossess him as was that of the landlord—indeed, the landlord is not entitled to possession, and can maintain no action to recover the premises. The right of immediate possession is alone in the lessee, and he must bring the action. Therefore, when the lessee is prevented from obtaining the enjoyment of the premises by a former tenant, whose tenancy had expired, the law seems to be settled his remedy is against the latter and not against the lessor. This is the rule as stated by the text writers, and is fully sustained by the authorities. *Taylor Lan. & Ten.* sec. 312; *Hatfield* v. *Fullerton,* 24 Ill. 278; *Gardner* v. *Keteltas,* and *Cozens* v. *Stevenson, supra.*" See also cases collected in note in 53 *A. S. R.* 115; 24 *Cyc.*

1054; *Tiffany, Landlord & Tenant,* p. 546, note 23; 16 R. C. L. 767.

Since, under the rule approved in these cases, the lessee is entitled to recover from a stranger wrongfully holding the leased premises such damages as he may have suffered from the interference with his possession, it would seem to follow, as a necessary corollary to that proposition, that he alone can recover damages for such interference, and that the lessor cannot, in an action for the breach of a covenant to deliver up the premises at the expiration of the term, recover more than nominal damages under such circumstances.

It was argued that *Gelston* v. *Sigmund,* 27 Md. 345, is opposed to this conclusion, but the Court in that case construed the contract between Gelston, the lessor, and Myerberg, the lessee, to mean that the lease was to commence "after the termination" of the lease to Sigmund, the tenant wrongfully holding over, and that it was therefore executory only. But if that case were in conflict with the decision in *Sigmund* v. *Bank, supra,* it could not affect our conclusion, since the latter case, which contains the more recent ruling of the Court on the subject, would be binding upon us.

Considering next the plaintiff's claim to compensation for expenses incurred in evicting Rice from the leased premises, we find that it is made up of two items, one for the costs of an "ejectment proceeding in the Peoples Court of Baltimore City," and the other for counsel fees incurred in removing the appellant from the property. From what has already been said, the appellee was under no obligation to eject Rice from the leased premises after the beginning of the term of the lease to Baer, and it had neither the right nor the title necessary to maintain a proceeding brought for that purpose, and for that reason it is not entitled to recover in this proceeding for any costs or expenses incurred in its efforts to oust Rice from the possession of the property. Nor could it have been entitled under any circumstances to recover such expenses in an action of this character. Whatever may be the law elsewhere, it has long been the settled law of this State

that, in the absence of some statutory provision, a successful litigant is not entitled to recover the fees paid by him to attorneys for prosecuting the litigation. *Wood* v. *State,* 66 Md. 61; *Hamilton* v. *Trimble,* 100 Md. 276; *McGraw* v. *Canton,* 74 Md. 554; *Corner* v. *McIntosh,* 48 Md. 390.

The remaining item of the damages which the plaintiff claims to have suffered is "for repairing the premises" after the appellant had vacated them. It is not alleged that the repairs were required by reason of any act of the appellant in violation of his covenant, or that they were needed to restore the property to the condition in which it was before the lease to Rice, or that Rice had in any way mutilated or defaced the property. In other words there is no *nexus* between the breach complained of and the necessity for repairing the appellee's property, and while the appellee would be entitled to recover from the appellant compensation for any expenditures which he was required to make in consequence of the appellant's breach of the covenants of the lease, he would first be bound to show that the repairs which he made were needed because of some damage done to the property during the tenant's occupancy thereof.

Now while it is true that the declaration would have been sufficient if it had merely stated the covenant of the lease and the breach thereof, yet, when it included in the same count claims for damages which could not be traced to the breach complained of but were independent of it, these additions vitiated the whole count. The plaintiff not only claimed damages for a breach of the covenant of the lease to deliver up the premises, but also for the use and occupation of the property after the term, and for the rental of an entirely different property for Baer during the time Rice was wrongfully holding the property. Such claims could not rest upon the lease, but one of them grew out of an independent tort, for while it is true the landlord could have elected to treat the tenancy as a continuance or renewal of the lease, he did not do that, but on the contrary elected to treat the tenant as holding over wrongfully, and under such circumstances the tenant

518         RICE *vs.* BILTMORE APTMTS. CO.

Opinion of the Court.                    [141

became liable for the use and occupation of the property, not
under the lease, but as one wrongfully in possession of it.
*Tiffany, Landlord & Tenant,* pars. 211, 212. The other
claim, if it had any justification at all, must have rested upon
a contract not even referred to in the *narr.* There is also
included in the same count a claim for expenses incurred for
counsel and court fees incurred in removing Rice from the
property, which claim, for the reasons given, cannot be main-
tained in this action. Because it includes these diverse and
independent matters, the seventh count, which is the entire
*narr.,* is bad, and the demurrer to it should have been sus-
tained.

We will now take up the exceptions and consider them in
inverse order, that is, we will deal first with the eleventh
exception, which relates to the prayers.

The plaintiff offered three prayers, all of which were
granted, and the defendant eight, all of which were refused.

No error can be assigned to the court's rulings on the
plaintiff's first and second prayers. It is true that its sec-
ond prayer was predicated upon a contract, relative to the
occupation of a part of the Hollins house by Baer, which
formed no part of the pleadings and was aside from any issue
in the case, but, as no special objection was made to it on that
ground in the lower court, we cannot consider it here. The
plaintiff's damage prayer, while open to the same comment,
was also subject to another and more fatal objection, and that
is, that it permitted the plaintiff to recover for court and
counsel fees expended in removing Rice from the property,
which, for reasons which need not be restated, cannot be re-
covered in this action. The defendant's first and second
prayers were the usual demurrers to the evidence. The first
prayer, which ignored the pleadings, was properly refused
since, if it was not limited by the pleadings, there was
enough evidence in the record to warrant a recovery. That is,
the evidence shows that Rice agreed to reimburse the appel-
lee for the payment it made to Hollins for an apartment
for Baer who was kept out of his apartment by Rice's wrong-

ful act, and it also indicated that the property was damaged while in Rice's possession. For such losses the plaintiff would in a proper case be entitled to recover. The defendant's third and sixth prayers, for reasons given above, correctly stated the law applicable to the facts to which they referred and should have been granted. The defendant's fourth prayer was bad because it ignored the evidence of a contract between Rice and the Biltmore Company, and his fifth prayer was bad for the same reason. The seventh prayer was bad because it ignored the fact that the rent fixed in the lease was itself evidence of the rental value of the property. There is no apparent objection to the defendant's eighth prayer, and it should have been granted.

The third, fourth and fifth exceptions relate to the admission of testimony relating to the counsel and court fees paid by the appellee in its efforts to eject Rice. This testimony should not have been admitted, and there was error in these rulings. There was also error in the rulings involved in the ninth and tenth exceptions, which involved the rulings of the court in excluding the appellant's testimony offered to show that the appellee had made the apartment untenantable during the time he occupied it after the term. There is no apparent objection to this testimony, but on the contrary it seems to have a natural and necessary connection with the claim before the court, which was for the fair value of the use and occupation of the premises by the defendant. The error was unimportant, however, since Baer and not the plaintiff was entitled to recover for such use and occupation.

We have carefully examined the remaining exceptions dealing with the court's rulings on questions of evidence and, having found no errors in them, it is needless to refer to them in greater detail.

Because of the errors indicated, the judgment appealed from will be reversed and, in order that the declaration may be amended, should the plaintiff so desire, the case will be remanded for a new trial.

> *Judgment reversed and case remanded for a new trial, with costs to the appellant.*