GOODWIN ADRIAN, PLAINTIFF-RESPONDENT, v. RACHEL RABINOWITZ, DEFENDANT-APPELLANT.

Argued October 2, 1935—Decided July 15, 1936.

Before Justices HEHER and PERSKIE.

For the appellant, *Isadore Rabinowitz.*

For the respondent, *Cohn & Kohlreiter* (*Peter Cohn,* of counsel).

The opinion of the court was delivered by

HEHER, J. On April 30th, 1934, defendant, by an indenture, leased to plaintiff certain store premises in the main business district of the city of Paterson for the term of six

months, commencing on June 15th next ensuing, at a stipulated monthly rent payable in advance; and the gravamen of this action is the breach of an obligation thereby imposed upon the lessor, as is said, to deliver to the lessee possession of the demised premises at the beginning of the term so prescribed. The state of demand is in two counts: The first seems to be grounded upon an asserted implied duty "to give and deliver possession" of the demised premises on the first day of the term; and the second, upon what plaintiff conceives to be an express covenant to put the lessee in possession on that day.

The lessee stipulated to devote the premises to the conduct of the shoe business; and he was given an option to renew the lease for an additional term of six months. Rent for the first month of the term was paid upon delivery of the lease, and the payment was acknowledged therein.

At the time of the execution of the contract, the premises were tenanted by another, who failed to respond to the landlord's notice to vacate on June 15th. The landlord deemed himself obliged to institute dispossess proceedings, which terminated in a judgment of removal. This judgment was executed on July 7th, 1934, and plaintiff took possession two days later.

The District Court judge, sitting without a jury, found for the plaintiff on the basic issue, and measured the damages at $500, "the loss sustained by plaintiff in the resale of the seasonable merchandise." He also ruled that plaintiff was not liable for rent for the portion of the term he was deprived of possession, and, making allowance for this, he awarded $25 to defendant on her set-off for rent due for the month beginning July 15th, 1934.

It is apparent that the tenant in possession when the lease was executed wrongfully held over after the termination of the tenancy; and the primary question, raised by motions to nonsuit and direct a verdict in defendant's favor, is whether, expressly or by implication, the contract imposed upon the lessor the duty of putting the lessee in actual and exclusive possession of the demised premises at the beginning of the term.

It seems to be the rule in this state that a covenant for quiet enjoyment, as one of the covenants of title, is not to be implied from the mere relation of landlord and tenant, even when that relation springs from a deed. *May* v. *Levy,* 88 *N. J. L.* 351; *Mershon* v. *Williams,* 63 *Id.* 398; *Gano* v. *Vanderveer,* 34 *Id.* 293; *Naumberg* v. *Young,* 44 *Id.* 331, 345. But here the lessor expressly covenanted that the lessee, "on paying the said monthly rent, and performing the covenants aforesaid, shall and may peaceably and quietly have, hold and enjoy the said demised premises for the term aforesaid." And it has been held elsewhere that a covenant for quiet enjoyment, similarly phrased, imposed upon the lessor the obligation to deliver possession of the premises on the first day of the term. *Clark, Admr.,* v. *Butt,* 26 *Ind.* 236; *King* v. *Reynolds,* 67 *Ala.* 229. Yet a covenant for quiet enjoyment is generally interpreted to secure the lessee against the acts or hindrances of the lessor, and persons deriving their right or title through him, or from paramount title, and does not protect the lessee from interference by strangers with his possession. Compare *Prospect Point Land Improvement Co.* v. *Jackson,* 109 *N. J. L.* 385; *O'Neill* v. *Pearse,* 87 *Id.* 382; *Playter* v. *Cunningham,* 21 *Cal.* 229; *Hannan* v. *Dusch,* 154 *Va.* 356; 153 *S. E. Rep.* 824; 70 *A. L. R.* 141; *Rice* v. *Biltmore Apartments Co.,* 141 *Md.* 507, 514; 119 *Atl. Rep.* 364.

It remains to consider whether the lessor, in the absence of an express undertaking to that effect, is under a duty to put the lessee in actual as well as legal possession of the demised premises at the commencement of the term. We are of the view that he is. There seems to be no dissent from the doctrine that the lessor impliedly covenants that the lessee shall have the legal right of possession at the beginning of the term. But there is a contrariety of view as to whether this implied obligation extends as well to actual possession, especially where, as here, the prior tenant wrongfully holds over. See 70 *A. L. R.* 151 *et seq.*

In some of our American jurisdictions, the rule obtains that, while the lessee is entitled to have the legal right of

possession, there is no implied covenant to protect the lessee against wrongful acts of strangers. *Gardner* v. *Ketellas, 3 Hill* 330; *Snider* v. *Deban, 249 Mass.* 59; 144 *N. E. Rep.* 69; *Hannan* v. *Dusch, supra; Gazzolo* v. *Chambers,* 73 *Ill.* 75. The English rule is that, where the term is to commence *in futuro,* there is an implied undertaking by the lessor that the premises shall be open to the lessee's entry, legally and actually, when the time for possession under the lease arrives. *Coe* v. *Clay,* 5 *Bing.* 440; 130 *Eng. Reprint* 113; *Jinks* v. *Edwards,* 11 *Exch.* 775; 156 *Eng. Reprint* 1045; *Drury* v. *Macnamara,* 5 *El. & Bl.* 612; 119 *Eng. Reprint* 608; *McDonald* v. *English,* 6 *Newfoundland* 278. This rule has the support of respectable American authority. *King* v. *Reynolds, supra; Thomas* v. *Croom,* 102 *Ark.* 108, 113; 143 *S. W. Rep.* 88; *Obermeier* v. *Mattison,* 98 *Or.* 195, 205; 192 *Pac. Rep.* 283; 193 *Id.* 915; *Rose v. Wynn,* 42 *Ark.* 257; *Cohn* v. *Norton,* 57 *Conn.* 480; 18 *Atl. Rep.* 595; *Clark, Admr.,* v. *Butt, supra; Voss* v. *Capital City Brewing Co.,* 48 *Ind. App.* 476; 96 *N. E. Rep.* 11; *Dilly* v. *Paynsville Land Co.,* 173 *Ia.* 536; 155 *N. W. Rep.* 971; *Mallingly's Ex'r.* v. *Brents,* 155 *Ky.* 570; 159 *S. W. Rep.* 1157; *L'Hussier* v. *Zallee,* 24 *Mo.* 13; *Herpolsheimer* v. *Christopher,* 76 *Neb.* 352; 111 *N. W. Rep.* 359; *Sloan* v. *Hart,* 150 *N. C.* 269; 63 *S. E. Rep.* 1037; 21 *L. R. A.* (*N. S.*) 239. And in an early case in this state, where the premises, while tenanted, were let for a term to begin on a fixed day in the future, and the lessor, in an action of covenant brought by the lessee for failure to deliver possession on the first day of the term, or any time thereafter, pleaded inability to deliver possession because of the wrongful holding over by the tenant, this court construed the stipulation for possession at the commencement of the term "as an express covenant to let the premises, and give possession" on the first day of the term, and held that the lessor, having failed in the performance of the duty thus undertaken, was liable to the action. *Kerr* v. *Whitaker,* 3 *N. J. L.* 247.

The English rule, so-called, is on principle much the better one. It has the virtue, ordinarily, of effectuating the com-

mon intention of the parties—to give actual and exclusive possession of the premises to the lessee on the day fixed for the commencement of the term. This is what the lessee generally bargains for; and it is the thing the lessor undertakes to give. Such being the case, there is no warrant for placing upon the lessee, without express stipulation to that effect, the burden of ousting, at his own expense, the tenant wrongfully holding over, or the trespasser in possession of the premises without color of right at the commencement of the term; and thus to impose upon him who is not in possession of the evidence the burden of establishing the respective rights and duties of the lessor and the possessor of the lands *inter se,* as well as the consequences of the delay incident to the adjudication of the controversy, and the obligation to pay rent during that period. As was said by Baron Vaughan in *Coe* v. *Clay, supra:* ."He who lets agrees to give possession, and not merely to give a chance of a law suit." This doctrine is grounded in reason and logic. The underlying theory is that the parties contemplated, as an essential term of their undertaking, without which the lease would not have been made, that the lessor should, at the beginning of the term, have the premises open to the entry and exclusive possession of the lessee. This is certainly the normal course of dealing, and, in the absence of stipulation to the contrary, is to be regarded as the parties' understanding of the lessor's covenant to deliver possession of the demised premises at the time prescribed for the commencement of the term.

There is an obvious distinction, which seems to have been overlooked in some of the cases rejecting the English doctrine, *e. g., Snider* v. *Deban, supra,* between a wrongful possession at the time fixed for the commencement of the term and the acts of trespassers who intrude after the lessee has been given the possession provided by the contract. 16 *R. C. L.* 724 *et seq.*

It is worthy of note that here the lessor, apparently conscious of a contractual obligation in the premises, initiated and prosecuted to a conclusion the proceedings requisite for dispossession of the hold-over tenant. She interpreted the contract as imposing the duty.

Therefore, the motions for a nonsuit and a direction of a verdict in defendant's favor on the ground that there was no evidence of a breach of her undertaking to deliver possession of the demised premises at the stipulated time were rightly denied.

But there was error in the admeasurement of the damages claimed to have ensued from the breach of the undertaking. The judge found as a fact that the "plaintiff would have disposed of at least $2,800 worth of seasonable merchandise," purchased in anticipation of delivery of possession of the demised premises at the commencement of the prescribed term, "had he had possession in accordance with the terms of" the lease, and that he was thereafter compelled to sacrifice this merchandise at twenty-five per cent. below cost.

The measure of damages for the breach of an undertaking to lease is, in the absence of special circumstances attending the making of the contract, and communicated by the party asserting the breach to the one charged therewith, the difference between the actual rental value and the rent reserved for the period of the deprivation of possession. *Weiss* v. *Revenue Building and Loan Association*, 116 *N. J. L.* 208; 182 *Atl. Rep.* 891; *Drischman* v. *McManemin*, 68 *N. J. L.* 337. The damages recoverable are those fairly and reasonably within the contemplation of the parties to the contract, at the time of its making, as the probable consequences of the breach; and this principle likewise obtains when the contract is made under special circumstances known to the party charged with the breach. The injured party is entitled to have the damages ordinarily flowing from the breach of a contract made under the known special circumstances, *i. e.*, the direct and immediate result of the non-fulfillment of the contract. But the law, in the estimation of the damages consequent upon the breach, applies that formula which makes for the greater definiteness and certainty; and, in a case such as this, the difference between the rental value and the rent reserved measures the damages with that degree of certainty which the law terms reasonable, while evidence of possible profits during the period in question, and, by the same

reasoning, losses resulting from the depreciation in value of seasonal merchandise which might have been sold, do not provide a definite and trustworthy standard. The hazards, contingencies and uncertainties incident to the operation of a newly established business preclude the consideration of such factors in the appraisement of the injury. They are too remote and speculative to serve as a satisfactory guide. Compare *Weiss* v. *Revenue Building and Loan Association, supra; Cramer* v. *Grand Rapids Show Case Co.*, 223 *N. Y.* 63; 119 *N. E. Rep.* 227; *Witherbee* v. *Meyer,* 155 *N. Y.* 446; 50 *N. E. Rep.* 58; *Griffin* v. *Colver,* 16 *N. Y.* 489; *Pennypacker* v. *Jones,* 106 *Pa. St.* 237; *Cassidy* v. *Lefevre,* 45 *N. Y.* 562.

But, granting that depreciation in the value of the merchandise may fairly and reasonably be supposed to have been within the contemplation of the parties to the contract as the probable result of the breach, and that the making of the contract under the asserted special circumstances may be established by parol (see *Polk* v. *Ferguson,* 82 *N. J. L.* 566, 572; *Witherbee* v. *Meyer, supra*), the proofs offered do not warrant the application of that standard. Plaintiff was permitted to estimate the *quantum* of probable sales of merchandise during the period in question upon the basis of "the amount of business did [*sic*] after" he took possession, and the business done in another store located eight blocks away. He did not produce his books of account, or introduce testimony from his accountant, even after promising to do so during the course of the trial. His own evidence upon this point was vague and uncertain, although concededly capable of precise and exact proof. Justification for the application of such a rule in the admeasurement of damages must necessarily rest upon the hypothesis of the existence of provable data furnished by experience as the basis for an estimation of the *quantum* of the loss with a reasonable degree of certainty. There was no proof of such data here, assuming its existence, and therefore no basis for the award made. *Weiss* v. *Revenue Building and Loan Association, supra; Bartow* v. *Erie Railroad Co.*, 73 *N. J. L.* 12; *East Jersey Water Co.*

v. *Bigelow*, 60 *Id*. 201; *Mason* v. *Erie Railroad Co.*, 75 *Id*. 521; *Cranmer* v. *Grand Rapids Show Case Co.*, *supra*.

It is to be presumed that seasonal goods would be offered during the period in question at prices calculated to yield a reasonable profit, and the sale thereof below cost deferred until the season had ended. And it is significant that plaintiff disposed of the business before the expiration of the relatively short term granted by the lease. From this it is fairly inferable that he was engaged in an experiment that did not prove successful. But however this may be, it furnishes an added reason for the introduction of all provable data bearing upon this issue.

Judgment reversed, and a *venire de novo* awarded; costs to abide the event.