## OCTOBER TERM, 1847.

ROBERT W. WOOD vs. W. LADD, P. A. BRINSMADE, and WM. HOOPER.

There is no law of this Kingdom which makes a seal necessary to the validity of a deed.

In this instance the deed *purported* to be *sealed* by the parties.

When a party recovers judgment upon secured and unsecured debts, he may first apply what is collected to the extinguishment of the unsecured portion of the debts, and next in satisfaction of the secured part.

This was a petition to the equity side of the court for the foreclosure of a certain mortgage, and decree of sale of the mortgaged premises.

The defendants, Messrs. Brinsmade, Ladd, and Hooper, a mercantile firm of Honolulu, doing business under the name of Ladd & Co., on the 10th day of August, 1844, loaned of the complainant the sum of $15,389 92, and gave him a mortgage on their sugar plantation, &c., on the Island of Kauai, as security. The time for the payment of the above sum having elapsed, this petition was filed.

At the first hearing of the case, an answer to complainant's petition was filed by defendants Reynolds, Munn and Boardman, objecting to the validity of the mortgage, and to the prayer of complainant. But subsequently those objections were withdrawn.

The Hawaiian Treasury Board, as a prior incumbrancer, claimed by virtue of an agreement with Messrs. Ladd & Co., dated 13th September, 1842, to have a prior lien upon the mortgaged premises for $3,500.

The complainant denied the validity of the agreement upon which this claim was based, or that anything was due to the Hawaiian Treasury Board, on the ground that said agreement was a mere *memorandum* of an agreement, without consideration, and not under seal ; second, that if anything was ever due said Board by virtue of that agreement, the same had been paid.

Mr. Jasper and Mr. DeFiennes for complainant.

Mr. Judd for Hawaiian Treasury Board.

After a full hearing of the evidence, the Judge charged the jury, in substance, as follows:

*Gentlemen of the Jury :*

The main questions we have to determine are these:

*First*, whether the mortgage is valid or not? and if valid,

*Second*, whether the conditions of that mortgage have been broken, and if so, the amount due the complainant?

*Third*, whether there are any valid prior incumbrances, and if so, what is their amount?

On the first question, gentlemen, as to the validity of the mortgage, we have no room to doubt. All the persons known to the Court as having any interest in the mortgaged premises, have been made parties to the plaintiff's petition, in order that if they had any objections to the validity of the mortgage, they might come forward and offer such objections on this occasion. No such objections have been

C

offered, and therefore, this question must be taken as settled in favor of the validity of the mortgage.

In regard to the second question, it is equally clear with the first. There is no denial that the conditions have not been broken, nor any pretence that the mortgagee has ever received any portion of the principal or interest secured by this mortgage. Therefore you have only to compute the amount due on the mortgage, and you will ascertain this by taking the principal $15,389 92, and adding the interest on that sum at twelve per centum per annum, the rate of interest stipulated for in the mortgage, from the 10th day of August, A. D. 1844, up to the present time.

The third question as to the rights of prior incumbrancers, and the amount due them, is one of more difficulty, and is the only one which is contested.

The only prior incumbrance set up, is that of the Hawaiian Treasury Board, which is founded upon an agreement entered into between the Hawaiian Treasury Board and the defendants Brinsmade, Ladd and Hooper, on the 13th day of September, 1842, whereby the defendants just named, agree that if the Hawaiian Treasury Board will take the paper money issued by Ladd & Co. at their Sugar Plantation on the Island of Kauai, in payment for taxes, &c., at its face, or as equivalent to the silver dollar, that they will redeem all their paper money thus received, by giving their promissory notes, payable in six months, without interest, at the rate of fifty cents for every dollar of paper. And they further agree to pledge their sugar plantation at Koloa as security for the payment of these notes. The money was issued, received, the notes given, and the terms of the agreement carried out in good faith by both parties. It is some of these notes which constitute the claim of the Hawaiian Treasury Board, and which they contend are a good lien upon the mortgaged premises, under the agreement.

It is objected on the part of the complainant's counsel that the Hawaiian Treasury Board have no valid lien upon the mortgaged estate.

1. Because the document upon which said lien is based is only a *memorandum* of an agreement and not an agreement itself.

2. Because said document is made without any consideration whatever, and is void in law.

3. Because said document is not under the seal of the parties.

The first objection, gentlemen, is of too trivial a nature to demand much of our notice. The instrument commences thus : "Memorandum of an agreement made and entered into between the Hawaiian Treasury Board." &c. After this follows the agreement. Whether the words "memorandum of" be omitted or not, it can make no difference whatever with the agreement that follows. These words, "memorandum of," are very proper, and are more or less used by every conveyancer in writing out agreements. What possible bearing it can have on the validity of an agreement whether it commences "An agreement made and entered into," &c , or "A memorandum of an agreement made and entered into," &c., is more than the Court is able to see. Nothing is more common or proper than for parties previously to entering into agreements to talk over the matter, and fix upon the terms of the agreement, and then sit down and commit the same to writing, commencing, "A memorandum," &c.

The second objection like the first, is wholly without foundation. In all mutual contracts of this nature, the acts to be performed by one party, is the consideration for the acts to be performed by the other party.    No principle of law or common sense is more clear. A. B. in consideration of certain acts to be done by C. D., promises to perform certain other acts.    Here the promise of the one party forms the consideration for the promise of the other.    Without dwelling longer on this point, let us pass to the third objection, which is, that the agreement is invalid because the seals of the parties are omitted.

Whether seals are necessary to the validity of deeds and other instruments affecting lands in this kingdom is a question new to our courts, and is now for the first time mooted.    There is no law of this kingdom making seals necessary to the validity of such instruments, and the objection can be urged only on the authority of the laws of other countries.    Whether it would be politic or wise to adopt that rule in this kingdom, I question.    I know of deeds to land, a much higher instrument than this, signed by his Majesty, the present King, and the late Premier, to which no seal is annexed, and to say that those deeds made in times past, are void for the want of seals, would be, to my mind, rank injustice.    Were our courts to decide upon the validity of instruments made in the Sandwich Islands during the last ten years, where the services of professional men could not be had, by the techuical rules of England and the United States, we should unmoor and set afloat half the titles to property in this kingdom. Seals are but mere matters of form at the best, and never partake of the essence and substance of the agreement.    In ancient days their importance was much greater.    In those times they were often used not only as a seal but as seal and signature.    In fact the use of seals as a means of authenticity and signature to instruments, can be traced back through all antiquity.    We find them often spoken of in the Bible, and in all history, both sacred and profane.    But their importance as giving validity to instruments has of late greatly diminished.    In many countries they are made necessary by statute to conveyances of land, while in many other countries their use has been virtually abolished.    The policy of making them necessary to the validity of such conveyances has been questioned by able writers; and in most of the southern and western states of the United States, a flourish at the end of a name, or an ink circle or scroll is all that is necessary.    Undoubtedly seals add solemnity to deeds, and on this account I would always recommend their use, but as there is no statute or common law in Hawaii making them necessary, I am of the opinion that no deed could be invalidated for their want.

But allowing that they were necessary to give validity to the instrument before us, their omission in this case ought, perhaps, to be supplied.    It was plainly the intention of the parties to affix their seals to this instrument, and their omission must have been entirely accidental. For the parties say in the latter clause of this pledge, " The parties have herewith subscribed their names and affixed their seals this 13th," &c.    Nothing can be plainer than the intention, and if necessary the Court would, perhaps, carry out that intention; for courts having equity powers will sometimes supply the want of seals, witnesses—nay, even signatures to *wills*, in order to carry out the inten-

tion of the testator.   In any contract the intention as gathered from
the words and actions of the parties, is the great helm that must gov-
ern us in arriving at a correct decision.   In the language of that great
and good man Justice Story,  " Equity will give effect to the real in-
tentions as gathered from the objects of the instrument, and the cir-
cumstances of the case, although the instrument may be drawn up in
a very inartificial and untechnical manner."   That it was the inten-
tion of the contracting parties in this case to affix their seals and to
bind this land as a security for the payment of these notes, there can
be no doubt.   Therefore, if there were any technical defects neces-
sary to be supplied in this instrument, this manifest intention might,
perhaps, afford a remedy.   But such is not the case.   Both parties
have carried out the terms of this contract in good faith, and there
can be no question of its validity as a pledge, and lien upon the mort-
gaged premises.

The only question remaining, and in fact the only real question in-
volved in the case is, What amount is due the Hawaiian Treasury
Board under this agreement ?

It seems that on the 30th of October, 1844, the Hwaiian Treasury
Board recovered a judgment by confession, against Ladd & Co., for
the sum of $8,478 80, in which judgment was included two promis-
sory notes given for their paper money, amounting with interest to
some eighteen hundred dollars.   An execution was issued upon this
judgment, and the whole amount collected, except $1,552 36.   On
the part of the Hawaiian Treasury Board, it is contended that they
have the right to consider this $1,552 36 with interest up to this date,
as the balance of the paper money debt entering into this judgment,
and that as such it forms a good lien upon the Koloa plantation.   On
the other hand it is contended that the lien for this amount has been
cancelled by obtaining judgment.   Undoubtedly the notes are cancel-
led by the judgment, but is the debt and lien thereby destroyed?   By
no means.   That can only be done when the debt is paid.   But say
the counsel for the plaintiff, the judgment which includes these notes
has been mostly collected, and how are we to tell whether the amount
collected on this judgment was not applied in extinguishment of these
notes ?   This can only be determined by the settled principles of
equity.   When a man recovers a judgment upon secured and unse-
cured debts, equity will apply whatever is collected on such judgment,
first, in extinguishment of the unsecured portion of the judgment, and
next in satisfaction of the secured part.   To establish the rule that
the recovery of the judgment destroys all difference between the se-
cured and unsecured debts, and that whatever is collected upon the
judgment should be applied to the payment of both in the same pro-
portion, would be inconsistent with reason and justice.   To measure
then, the claim of the Hawaiian Treasury Board for this balance of
$1,552 36 by this rule, it will be found good.

The balance of the claim of the Hawaiian Treasury Board is based
on a promissory note for $1,118 62, payable in six months, dated
November 25, 1844, given by Ladd & Co. for paper money.   The
agreement under which this note was given, and by virtue of which
it is claimed that it forms a prior lien upon the mortgaged premises,
was to go into operation on the first day of October, 1842, and con-
tinue in force until the first day of October, 1844.   Now this note it

seems was not given until nearly two months after the time limited for the operation of the agreement had expired. Therefore it is contended by the complainant that it can form no lien under the agreement, upon the mortgaged estate. The Hawaiian Treasury Board answer this by endeavoring to show that the paper money for which this note was given, was in fact received before the first day of October, 1844, the expiration of the agreement, but that it was impossible for the officers on Kauai to forward the money to the Hawaiian Treasury Board at Honolulu, before the 25th November following, and that this is the reason why the note. was not given within the life of the agreement If you should find, gentlemen, that the money was actually received before the first day of October, 1844, then equity demands that it should be allowed. If on the other hand you should find that it was not received until after the expiration of the agreement, then it ought to be rejected.

With these remarks, gentlemen, I leave the case in your hands to render such a verdict as justice and the evidence may direct.

The jury, after an absence of an hour and a half, returned into court and rendered their verdict (one juror dissenting) in favor of complainant's prayer, and found the amount due complainant to be $21,207 30. Also, that a prior claim and first to be satisfied out of the mortgaged estate, existed in favor of the Hawaiian Treasury Board to the amount of $3,437 55.