2370. BROWDER-MANGET COMPANY *v.* EDMONDSON.

1. In a lease contract, where there is no stipulation to the contrary, the lessor impliedly warrants that the leased premises shall be open to entry by the lessee at the time fixed for taking possession. But the law does not impose upon the lessor the duty of putting the lessee in possession of the leased premises. It demands only that the possession shall not be withheld when the lessee seeks it under the contract.

2. There are inferences fairly deducible from the evidence and from the testimony which the court improperly excluded, that, uncontroverted, would have entitled the plaintiff to recover, and therefore the judgment of nonsuit was erroneous.

Appeal; from Fulton superior court—Judge Bell.    November 4, 1909.

Argued February 25,—Decided June 14, 1910.

Rehearing denied July 5, 1910.

The Browder-Manget Company leased from the Georgian Company a storehouse, No. 23 West Alabama Street, Atlanta, for a term of 25 months, and the Browder-Manget Company subleased to George R. Edmondson space in the storehouse, 15 by 57 feet, for two years commencing April 1, 1909, and ending March 31, 1911.    The rental was $100 per month for the first year, and $125 per month for the second year, payable in advance.    The lease was in writing, dated February 26, 1909, and duly executed. On March 18, 1909, Browder-Manget Company wrote a letter to Edmondson, notifying him that the Georgian Company would be delayed in vacating the storehouse, and asking him if it would be convenient for him to delay taking possession until April 15, and stating that if the delay was inconvenient to him, they would have the Georgian Company remove and give him possession by April 1, as stated in the contract.    In reply to this letter Edmondson on the same day wrote a letter consenting to the delay requested, and saying that he would wait until April 15 for the lease to become effective.    It was further shown that the storehouse and basement in question, exclusive of the space which had been rented to Edmondson, was placed by Browder-Manget Company in the hands of real-estate agents for subrenting, beginning April 15, at which time it was expected that the Georgian Company would vacate. It was also shown that the space rented to Edmondson was placed by him in the hands of an agent to sublet.    The evidence does not clearly show when Edmondson employed the agent to sublet the space, but it was sometime prior to April 15, when, under the terms of the lease as amended, he was to have possession.    Several conversations were also had between Mr. Edmondson and his agents in reference to subletting this space, Mr. Edmondson desiring to sublet it for a "near beer" saloon, and the landlord and the agent both objecting to this character of tenant.    On April 15 no notice was given by the lessor to the lessee that the rented space was ready for him and that he could take possession thereof, nor did the lessee make any demand on the lessor for possession, or come to the storehouse for the purpose of taking possession.    On May 8 the

lessor wrote to Edmondson that the space was ready for him. Edmondson, after the receipt of this letter, did not take possession of the premises, unless the placing of a rent card by his agent in the place could be considered as equivalent to possession, and the letter of May 8, which the lessor had written to him notifying him that he could take possession, was not answered until May 20, when he wrote the following letter: "In reference to the lease of the store, 23 West Alabama Street, beg to say that, owing to the fact that I was unable to obtain possession of the store according to the terms of the lease and the amended lease, and in view of the fact, as you know, I rented the property for other people, and could not give them possession as agreed upon, they had to make other arrangements, annulling agreements they made with me. On May 11th, I stated to you, through your Mr. Wynne, that you had the right to rent the entire building and that it was subject to your order. . . Therefore the lease that I made with you I have already treated as void, owing to the fact that the party to whom I rented the place has left the city because I could not deliver the property to him according to the terms of my contract." It was further shown that the property of the Georgian Company, from whom the Browder-Manget Company had rented the store, was, until May 8, on the space which had been rented to Edmondson, that this property consisted of a counter and several desks, and that it would require about two hours to remove them from the space. Edmondson never asked that this property be removed from the space. The plaintiff also offered to prove that the Georgian Company had been informed by the Browder-Manget Company that this space had been sublet to Edmondson, and that their furniture should be removed whenever Edmondson desired the space, and that arrangements had been made with the Georgian Company to remove these articles of furniture whenever Edmondson desired to take possession of the premises which he had subrented from the Browder-Manget Company. The court refused to allow evidence of these facts, and the plaintiff excepted to this ruling. In the letter of May 8, written by Browder-Manget Company to Edmondson, the following language was used: "The Georgian has vacated that part of their building which we leased to you, and same is ready for occupancy. Please send us your check Monday for two thirds of the month of May, $66.67, so as

to make it due thereafter on the first of each succeeding month." Edmondson refused to pay the rent, and suit was brought against him in a justice's court for $100, rent under the lease contract from April 15 to May 15, 1909. The case was appealed to a jury in the superior court, and, after the introduction of the testimony for the plaintiff, as above substantially stated, the court awarded a nonsuit; to which the plaintiff excepted.

*Samuel D. Hewlett, Nathan Harris,* for plaintiff.

*Thomas L. Bishop,* for defendant.

HILL, C. J.   (After stating the foregoing facts.)

The authorities on the question as to whether it is the duty of the lessor to deliver possession of the leased premises, or whether it is the duty of the lessee to demand possession at the time specified in the lease, are in conflict. The English rule seems to be that the duty is upon the lessor to notify the lessee that the leased premises are ready for his possession, and to "clear the possession" for the lessee. In the case of Coe *v.* Clay, 5 Bingham, 440, it is held that he who lets agrees to give possession, and if he fails to do so, the lessee may recover damages against him. The American courts generally hold that it is the duty of the lessee to take possession of the leased premises when the lease begins, and if possession is wrongfully withheld, the lessee may repudiate the contract and the lessor can not recover rent, as the date fixed for possession is of the essence of the contract of lease. Gear, L. & T. §163. We think the conflict between the authorities is more apparent than real, and that the true rule on the subject is that where the lease contains no stipulation to the contrary, there is an implied covenant on the part of the lessor that the premises shall be open to entry by the lessee at the time fixed by the lease for him to take possession, and if possession is then wrongfully withheld from the lessee, he can maintain an appropriate action against the lessor, or can at his option repudiate the contract and bring an action for damages for its breach. 24 Cyc. 1049, and cit. In other words, the lessee has the right of entry at the time fixed by the lease for him to take possession, but he must do something towards exercising this right. He must go to the leased premises and see whether they are ready for his possession, and see whether there is any obstacle in the way of his taking possession. He has the right to assume, and to act upon the assumption, that the premises will be

ready for him to take possession at the time specified in the lease. If he finds that the leased premises are still in the possession of the lessor, or in the possession of a third person, and he is refused possession,. he is not obliged to bring an action to obtain possession of the premises, but he may repudiate the contract and sue the lessor for its breach.    An entry by the lessee, however, is not necessary to give effect to a lease contract.    The lease takes effect upon its execution, and while the possession and enjoyment of the leased property is a condition precedent to the right of the lessor to recover the rent, yet, before the lessee can repudiate the contract on the ground that possession and enjoyment are wrongfully withheld from him, he must do something to show that he desires possession.    After the execution of the contract he can not remain wholly inactive in reference to possession and justly claim that he is excluded therefrom by the wrongful act of the lessor.

Apply these general rules to the facts of this case.    The time for the lessee to take possession under the lease as amended by consent was April 15.    The lessor had by implication notified him that on that day the premises would be vacated by the Georgian Company and would be ready for him.    The lessor was not required to give him notice on April 15 that he could take possession of the leased premises.    Any notice then would have been simply the reiteration of information given by the lease.    He had the right to assume that he could do so, and it was his duty to go and take possession, and if he saw that the premises were not then ready for his possession, he should have called the attention of the lessor to the matter and demanded of him that possession be given. If he had gone on April 15 to take possession of the rented premises, he would have found the property of the Georgian Company occupying the space which had been rented to him.    If the property was of such character as could be readily removed, and indicated a mere casual and temporary occupancy, it would have been his duty to request his lessor to have the property removed.    He did not do this.    He made no request that the property of the Georgian Company be removed from the space which was leased to him.    He did not even object to its being there or call the attention of the lessor to the fact that it was occupying his space, and he could not have repudiated his contract unless it was apparent that the lessor or someone else intended to exclude him from the

possession, or that the occupancy of the leased premises was of such a character as to justify the conclusion that possession was wrongfully withheld. The occupancy by the Georgian Company of the space rented by him was equivocal in character. It was subject to explanation, and if it was shown, as above intimated, that this furniture could have been readily and speedily removed and was no serious obstacle to possession and was not intended as an impediment, he could not set up the fact that it was occupying the space rented by him, as a reason of sufficient materiality or gravity to justify him in repudiating his contract. We do not think the court, under the facts of this case, was warranted in holding, as matter of law, that possession was wrongfully withheld by the lessor or by the Georgian Company from the lessee, and that, therefore, he was entitled to repudiate his contract, but this question should have been submitted to the jury.

*Judgment reversed.*