# Wytheville.

## JAMES T. HANNAN v. WALTER F. DUSCH.

June 12, 1930.

Absent, Campbell and Holt, JJ.

The opinion states the case.

*N. T. Green*, for the plaintiff in error.

*Miller & Jacob*, for the defendant in error.

PRENTIS, C. J., delivered the opinion of the court.

The declaration filed by the plaintiff, Hannan, against the defendant, Dusch, alleges that Dusch had on August 31, 1927, leased to the plaintiff certain real estate in the city of Norfolk, Virginia, therein described, for fifteen years, the term to begin January 1, 1928, at a specified rental; that it thereupon became and was the duty of the defendant to see to it that the premises leased by the defendant to the plaintiff should be open for entry by him on January 1, 1928, the beginning of the term, and to put said petitioner in possession of the premises on that date; that the petitioner was willing and ready to enter upon and take possession of the leased property, and so informed the defendant; yet the defendant failed and refused to put the plaintiff in possession or to keep the property open for him at that time or on any subsequent date; and that the defendant suffered to remain on said property a certain tenant or tenants who occupied a portion or portions thereof, and refused to take legal or other action to oust said tenants

or to compel their removal from the property so occupied. Plaintiff alleged damages which he had suffered by reason of this alleged breach of the contract and deed, and sought to recover such damages in the action. There is no express covenant as to the delivery of the premises nor for the quiet possession of the premises by the lessee.

The defendant demurred to the declaration on several grounds, one of which was "that under the lease set out in said declaration the right of possession was vested in said plaintiff and there was no duty as upon the defendant, as alleged in said declaration, to see that the premises were open for entry by said plaintiff."

The single question of law therefore presented in this case is whether a landlord, who without any express covenant as to delivery of possession leases property to a tenant, is required under the law to oust trespassers and wrongdoers so as to have it open for entry by the tenant at the beginning of the term—that is, whether without an express covenant there is nevertheless an implied covenant to deliver possession.

For an intelligent apprehension of the precise question it may be well to observe that some questions somewhat similar are not involved.

It seems to be perfectly well settled that there is an implied covenant in such cases on the part of the landlord to assure to the tenant the legal right of possession—that is, that at the beginning of the term there shall be no legal obstacle to the tenant's right of possession. This is not the question presented. Nor need we discuss in this case the rights of the parties in case a tenant rightfully in possession under the title of his landlord is thereafter disturbed by some wrongdoer. In such case the tenant must protect himself from trespassers, and there is no obligation on the landlord to

assure his quiet enjoyment of his term as against wrong-doers or intruders.

■ Of course, the landlord assures to the tenant quiet possession as against all who rightfully claim through or under the landlord.

The discussion then is limited to the precise legal duty of the landlord in the absence of an express covenant, in case a former tenant, who wrongfully holds over, illegally refuses to surrender possession to the new tenant. This is a question about which there is a hopeless conflict of the authorities. It is generally claimed that the weight of the authority favors the particular view contended for. There are, however, no scales upon which we can weigh the authorities. In numbers and respectability they may be quite equally balanced.

It is then a question about which no one should be dogmatic, but all should seek for that rule which is supported by the better reason.

That great annotator, Hon. A. C. Freeman, has collected the authorities as they were at the time he wrote, in 1909, in a note to *Sloan* v. *Hart* (150 N. C. 269, 63 S. E. 1037), 134 Am. St. Rep. 916. We shall quote from and paraphrase that note freely because it is the most succinct and the most comprehensive discussion of the question with which we are familiar.

■ It is conceded by all that the two rules, one called the English rule, which implies a covenant requiring the lessor to put the lessee in possession, and that called the American rule, which recognizes the lessee's legal right to possession, but implies no such duty upon the lessor as against wrongdoers, are irreconcilable.

The English rule is that in the absence of stipulations to the contrary, there is in every lease an implied covenant on the part of the landlord that the premises shall be open to entry by the tenant at the time fixed by the

lease for the beginning of his term. These cases appear to support that rule: *King* v. *Reynolds*, 67 Ala. 229, 42 Am. Rep. 107; *Rose* v. *Wynn*, 42 Ark. 257; *Cohn* v. *Norton*, 57 Conn. 480, 18 Atl. 595, 5 L. R. A. 572; *Spencer* v. *Burton*, 5 Blackf. 57; *Clark* v. *Butt*, 26 Ind. 236; *Hammond* v. *Jones*, 41 Ind. App. 32, 18 N. E. 2571; *L'Hussier* v. *Zallac*, 24 Mo. 13; *Hughes* v. *Hood*, 50 Mo. 350; *Kean* v. *Kolkschneider*, 21 Mo. App. 538; *Rieger* v. *Welles*, 110 Mo. App. 173, 84 S. W. 1136; *Kerr* v. *Whitaker*, 3 N. J. L. 670; *Albey* v. *Weingart*, 71 N. J. L. 92, 58 Atl. 87; *Herpolsheimer* v. *Christopher*, 76 Neb. 352, 107 N. W. 382, 111 N. W. 359, 9 L. R. A. N. S., 1127, 14 Ann. Cas. 399; *Sloan* v. *Hart*, 150 N. C. 269, *ante*, 63 S. E. 1037, 21 L. R. A., N. S., 239; *Hertzberg* v. *Beisenbach*, 64 Tex. 262; *Stewart* v. *Murphy*, 95 Kan. 421, 148 p. 609; *Coe* v. *Clay*, 5 Bing. 440, 3 M. & P. 57, 7 L. J. C. P., O. S., 162, 30 R. R. 699; *Jinks* v. *Edwards*, 11 Ex. 775, 4 R. R. 303.

A dictum to the same effect is found in *Schreiner* v. *Stanton*, 26 Wash. 563, 67 Pac. 219. In *Gross* v. *Heckert*, 120 Wis. 314, 97 N. W. 952, it was held in an action for breach of a lease that, where the landlord knew at the time the lease was made that he would not be able to deliver possession as required by the lease, and that the tenant intended to use the premises for a certain kind of business and to prepare to commence business at the beginning of the term, he is liable for all damages which could be reasonably considered to be the natural and proximate result of the breach."

It must be borne in mind, however, that the courts which hold that there is such an implied covenant do not extend the period beyond the day when the lessee's term begins. If after that day a stranger trespasses upon the property and wrongfully obtains or

withholds possession of it from the lessee, his remedy is against the stranger and not against the lessor.

■ It is not necessary for either party to involve himself in uncertainty, for by appropriate covenants each may protect himself against any doubt either as against a tenant then in possession who may wrongfully hold over by refusing to deliver the possession at the expiration of his own term, or against any other trespasser.

In *Rhodes* v. *Purvis*, 74 Ark. 227, 85 S. W. 235, the lessor agreed that the term should commence "from the date of occupancy, which shall commence as soon as vacated by the present occupants." He was not able to eject them as soon as contemplated, and it was held that this provision exempted him from any liability to the new tenant for failure to deliver possession prior to such vacation by the tenants in possession.

As has been stated, the lessee may also protect himself by having his lessor expressly covenant to put him in possession at a specified time, in which case, of course, the lessor is liable for breach of his covenant where a trespasser goes into possession, or wrongfully holds possession, and thereby wrongfully prevents the lessee from obtaining possession. *Snodgrass* v. *Reynolds*, 79 Ala. 452, 58 Am. Rep. 601.

*King* v. *Reynolds*, 67 Ala. 229, 42 Am. Rep. 107, has been said to be the leading case in this country affirming the English rule. In that case, after citing some of the cases which affirm the American rule, this is said: "With all due respect for the eminent jurists by whom the decisions in (*Cozens* v. *Stevenson*) 5 Serg. & R. (421), and in (*Gardner* v. *Keteltas*) 3 Hill (330, 38 Am. Dec. 637), were pronounced, it appears to us that in one phase of the question the argument is faulty. The principle applicable to the case of the lessee's eviction

by the lessor himself, or by a title paramount to that of the lessor, certainly rests on impregnable grounds. Such eviction is a breach of the implied covenant in every lease in general terms for quiet enjoyment, and at once bars the lessor's right to recover rent, and confers on the lessee a right of action for the lessor's breach of covenant. And when the lessee cannot maintain his possession, in consequence of the lessor's want of title to uphold his, the lessee's, possession, the latter need not wait for eviction, but may yield possession, and sue his lessor for the breach—he taking on himself the onus of proving the inability of the lessor to protect his possession by a valid title. And so, when there is no impediment to the possess'on at the time fixed by the terms of the lease for the lessee to take possession, it is no breach of the covenant of quiet enjoyment if a trespasser without title subsequently enter and evict the lessee in whole or in part. The lessee must meet such intrusions as that. But how about the implications at the time—the very moment—fixed by the terms of the lease for the lessee to take possession? Who is responsible if there is a trespasser, or tenant holding over, then in possession? Must the lessor clear the possession, or is this duty cast on the lessee? * * * The authorities being in conflict, how does this question stand on principle? As was said in *Coe* v. *Clay*, 5 Bing. 440, 3 M. & P. 57, 7 L. J. C. P., O. S., 162, 30 R. R. 699—decided long before *Gardner* v. *Keteltas* was—one who accepts a lease expects to enjoy the property, not a mere chance of a lawsuit. A lease for a year, or term of years, is not a freehold. It is a chattel interest. The prime motive of the contract is, that the lessee shall have possession; as much so as if a chattel were the subject of the purchase. Delivery is one of the elements of every executed contract. When a chattel is sold, the thing it-

self is delivered. Formerly parties went upon the land, and there symbolical delivery was perfected. Now the delivery of the deed takes the place of this symbolical delivery. Still, it implies that the purchaser shall have possession; and without it, it would seem the covenant for quiet enjoyment is broken. Up to the time the lessee is entitled to possession under the lease, the lessor is the owner of the larger estate, out of which the leasehold is carved, and ownership draws to it the possession, unless someone else is in actual possession. The moment the lessor's right of possession ceases by virtue of the lease, that moment the lessee's right of possession begins. There is no appreciable interval between them, and hence there can be no interregnum or neutral ground between the two attaching rights of possession, for a trespasser to step in and occupy. If there be actual, tortuous occupancy, when the transition moment comes, then it is a trespass or wrong done to the lessor's possession. If the trespass or intrusion have its beginning after this, then it is a trespass or wrong done to the lessee's possession; for the right and title to the property being then in the lessee for a term, it draws to it the possession, unless there is another in the actual possession: Taylor on Landlord and Tenant, sections 14, 15; 3 Washburn on Real Property, 117, 118."

As to the suggestion in that opinion that such a lease is a chattel, we think that it should be also observed that it is not a mere chattel which passes by delivery, but a chattel real. The lease here involved is for a fifteen year term, which cannot be created in this State except by deed, and therefore the title of the lessee, Hannan, and his right of possession became perfect without more when the deed was delivered. The suggestion in the opinion that there is no appreciable interval between the expiration of the term of the former tenant and the beginning

of the term of the new tenant does not seem to be significant, because just as soon as the first tenant's term ended the new tenant's term began, and there is no instant of time when the lessor had any right of possession because his tenants always had that right, and so the trespass or wrong done by the first tenant is to the lessee directly rather than to the lessor.

Another case which supports the English rule is *Herpolsheimer* v. *Christopher*, 76 Neb. 352, 107 N. W. 382, 111 N. W. 359, 9 L. R. A. (N. S.) 1127, 14 Ann. Cas. 399, note. In that case the court gave these as its reasons for following the English rule: "We deem it unnecessary to enter into an extended discussion, since the reasons pro and con are fully given in the opinions of the several courts cited. We think, however, that the English rule is most in consonance with good conscience, sound principle, and fair dealing. Can it be supposed that the plaintiff in this case would have entered into the lease if he had known at the time that he could not obtain possession on the 1st of March, but that he would be compelled to begin a lawsuit, await the law's delays, and follow the case through its devious turnings to an end before he could hope to obtain possession of the land he had leased? Most assuredly not. It is unreasonable to suppose that a man would knowingly contract for a lawsuit, or take the chance of one. Whether or not a tenant in possession intends to hold over or assert a right to future term may nearly always be known to the landlord, and is certainly much more apt to be within his knowledge than within that of the prospective tenant. Moreover, since in an action to recover possession against a tenant holding over, the lessee would be compelled largely to rely upon the lessor's testimony in regard to the facts of the claim to hold over by the wrongdoer, it is more reasonable and proper to place the

burden upon the person within whose knowledge the facts are most apt to lie. We are convinced, therefore, that the better reason lies with the courts following the English doctrine, and we therefore adopt it, and hold that, ordinarily, the lessor impliedly covenants with the lessee that the premises leased shall be open to entry by him at the time fixed in the lease as the beginning of the term."

In commenting on this line of cases, Mr. Freeman says this: "The above rule practically prohibits the landlord from leasing the premises while in the possession of a tenant whose term is about to expire, because notwithstanding the assurance on the part of the tenant that he will vacate on the expiration of his term, he may change his mind and wrongfully hold over. It is true that the landlord may provide for such a contingency by suitable provisions in the lease to the prospective tenant, but it is equally true that the prospective tenant has the privilege of insisting that his prospective landlord expressly agree to put him in possession of the premises if he imagines there may be a chance for a lawsuit by the tenant in possession holding over. · It seems to us that to raise by implication a covenant on the part of the landlord to put the tenant into possession is to make a contract for the parties in regard to a matter which is equally within the knowledge of both the landlord and tenant."

So let us not lose sight of the fact that under the English rule a covenant which might have been but was not made is nevertheless implied by the court, though it is manifest that each of the parties might have provided for that and for every other possible contingency relating to possession by having express covenants which would unquestionably have protected both.

Referring then to the American rule: Under

that rule, in such cases, "the landlord is not bound to put the tenant into actual possession, but is bound only to put him in legal possession, so that no obstacle in the form of superior right of possession will be interposed to prevent the tenant from obtaining actual possession of the demised premises. If the landlord gives the tenant a right of possession he has done all that he is required to do by the terms of an ordinary lease, and the tenant assumes the burden of enforcing such right of possession as against all persons wrongfully in possession, whether they be trespassers or former tenants wrongfully holding over." This quoted language is Mr. Freeman's, and he cites these cases in support thereof: *Playter* v. *Cunningham*, 21 Cal. 229; *Gazzolo* v. *Chambers*, 73 Ill. 75; *Cobb* v. *Laville*, 89 Ill. 331, 31 Am. Rep. 91; *Field* v. *Herrick*, 101 Ill. 110; *Sigmund* v. *Howard Bank*, 29 Md. 324; *Pendergast* v. *Young*, 21 N. H. 234; *Mechanics' etc. Ins. Co.* v. *Scott*, 2 Hilt. 550; *Gardner* v. *Keteltas*, 3 Hill 330, 38 Am. Dec. 637; *Becker* v. *DeForest*, 1 Sweeney 528; *Imbert* v. *Hallock*, 23 How. Pr. 456; *Mirsky* v. *Horowitz*, 46 Misc. Rep. 257, 92 N. Y. Supp. 48; *Cozens* v. *Stevenson*, 5 Serg. & R. 421; *Underwood* v. *Birchard*, 47 Vt. 305. These cases also recognize this rule: *West* v. *Kitchell*, 109 Miss. 328, 68 S. 469; *Saunders* v. *Roe*, (Ontario), 17 U. C. C. P. 344; *Browder-Magnet Co.* v. *Edmundson*, 7 Ga. App. 843, 68 S. E. 453; *Watkins* v. *Stulb*, 23 Ga. App. 181, 98 S. E. 94; *Judd* v. *Ladd*, 1 Hawaii 17.

So that, under the American rule, where the new tenant fails to obtain possession of the premises only because a former tenant wrongfully holds over, his remedy is against such wrongdoer and not against the landlord—this because the landlord has not covenanted against the wrongful acts of another and should not be

held responsible for such a tort unless he has expressly so contracted. This accords with the general rule as to other wrongdoers, whereas the English rule appears to create a specific exception against lessors. It does not occur to us now that there is any other instance in which one clearly without fault is held responsible for the independent tort of another in which he has neither participated nor concurred and whose misdoings he cannot control.

In the Pennsylvania case of *Cozens* v. *Stevenson*, 5 Serg. & R. 421, which enforces the American rule, this is said: "We are all clearly of opinion that the law implies no promise to deliver possession from the words of this lease. It is a bare demise for two years, without mention of the lessor's undertaking to deliver possession, although it is expressly said that at the date of the lease the house and wharf were occupied by Hugg. If a lease be made by the words 'grant or demise,' it amounts to a covenant by the lessor that he will make satisfaction to the lessee if he is lawfully evicted: 5 Coke, 17. So covenant lies on the word 'demise,' if the lessor had no power to demise, although the lessee neither entered nor was evicted: Hob. 12. So, also, covenant lies against the lessor, if he does an act which destroys or defeats the effect of his grant (as if he grant the use of a way and afterwards stops it): 1 Saund. 322. But a covenant, by the word 'demise,' is not broken by the eviction of the lessee, unless it be an eviction by good title: *Nokes* v. *James*, Cro. Eliz. 674; 4 Coke, 80b. Now, in the present instance, there was no defect in the title conveyed by the lessor to the lessee. Hugg was the tenant of the defendant, and held over unlawfully. It was in the power of the plaintiff to recover the possession by

virtue of his lease, and, in fact, he did recover it. He had, therefore, no cause of action against the defendant."

The case of *Gardner* v. *Keteltas*, 3 Hill, 330, 38 Am. Dec. 637, seems to be the first case in the United States in which the question was considered. The lease there contained the ordinary covenants of title and quiet enjoyment, and this is said: "All that either of the covenants mentioned exact of the lessor is that he shall have such a title to the premises, at the time, as shall enable him to give a free, unencumbered lease for the term demised. There is no warranty, express or implied, against the acts of strangers; hence, if the lessee be ousted by one who has no title, the law leaves him to his remedy against the wrongdoer, and will not judge that the lessor covenanted against the wrongful acts of strangers unless the covenant be full and express to the purpose: *Noke's Case*, 4 Rep. 80; *Dudley* v. *Folliott*, 3 Term Rep. 584; *Hayes* v. *Bickerstaff*, Vaugh. 118; Platt on Covenants, 314, and the cases there cited. I admit the covenant of quiet enjoyment means to insure to the lessee a legal right to enter and enjoy the premises, and if he is prevented from entering into the possession by a person already in, under a paramount title, the action may be sustained. That was decided in *Ludwell* v. *Newman*, 6 Term Rep. 458. In such a case, no ouster or expulsion is necessary on which to predicate a suit, as the lessee is not bound to enter and commit a trespass. *Holder* v. *Taylor*, Hob. 12; 1 Saund. 322a, note 2; Platt on Covenants, 327; *Grannis* v. *Clark*, 8 Cow. 36; and see 25 Wend. 446. But if the party holding is a wrongdoer, the remedy of the lessee is as perfect and effectual to dispossess him after, as that of the lessor was before, the execution of the lease. This is clearly so as it

respects the remedy by ejectment, and, I apprehend, equally so as it regards the more summary proceedings under the statute. * * * But whether this be so or not, upon the well-settled construction of the covenants of title and quiet enjoyment it is not the duty of the landlord, when the demised premises are wrongfully held by a third person, to take the necessary steps to put his lessee into possession. The latter being clothed with the title by virtue of the lease, it belongs to him to pursue such legal remedies as the law has provided for gaining it, whether few or many."

In *Playter* v. *Cunningham*, 21 Cal. 229, this is said: "The language of the covenant is that the lessees paying the rent shall peaceably and quietly have, hold and enjoy the premises for the term mentioned. This is the form usually adopted in such cases, and there is no doubt that a covenant of this character insures to the lessee a legal right to enter and enjoy the demised premises. The plaintiff contends that it amounts to an undertaking that the lessee shall be permitted to enter quietly and without suit, and that it devolves upon the lessor to remove any obstruction to his entry by putting him in possession. The defendant contends that it only implies a legal right to enter, and is not a guaranty against damages resulting from the wrongful act of a third person who may happen to be in possession. This we regard as the correct view; and although the authorities are not entirely uniform, we understand the law upon the subject to be perfectly well settled. Taylor on Landlord and Tenant, 147; Rawle on Covenants for Title, 147. The lessor is responsible upon the covenant for his own acts, and for the acts of others claiming by title paramount to the lease, but he is not responsible for the acts of a mere trespasser. The effect of these acts may be to

deprive the lessee of the benefit of the lease, but the remedy is against the person by whom the acts were committed and not against the lessor."

There seems to be some misunderstanding as to the attitude of the California court, it having been frequently said that the California court sustained the English rule. This, as Mr. Freeman shows, arises out of the erroneous conception of the case of *Rice* v. *Whitmore*, 17 Cal. 619, 5 Am. St. Rep. 479, 16 Pac. 501. In that case, however, the lease required the landlord to put the tenant in possession of the premises, and hence no question of such a duty under an implied covenant could arise, nor was the question discussed in that case.

In *Snider* v. *Deban*, 249 Mass. 59, 144 N. E. 69, the same question was presented. The lease was silent as to the delivery of possession, the former tenant wrongfully refused to vacate the premises, and there was no evidence of collusion on the part of the lessor. After stating the conflict in the authorities, citing them, and showing that cases in which the lessor expressly agrees to put the lessee in possession, or where there is an unexpired term of a previous lessee, have no application, the court adheres to the American rule, saying: "It is founded on the theory that the implied covenants of the lessor are that the premises are, and shall be, free and unencumbered for the term of the lease, but that there is no warranty against the acts of strangers. The lessee is entitled, as of right, under the implied covenant of the lease, to enter upon and enjoy the premises for the entire term. There is a breach of this implied covenant when the premises are in possession of anyone under a superior right as of a tenant under an unexpired term, or of one claiming under a paramount title. But there is no breach of this implied covenant

when a party is in possession, wrongfully holding after the expiration of a pre-existing lease. He is a pure wrongdoer. A lessor makes no covenant against such a wrongdoer any more than against a wrongdoer who, without right, and without warranty from the landlord, expels the tenant after the term has begun."

Another recent American case is *Rice* v. *Biltmore Apartment Co.*, 141 Md. 514, 119 Atl. 364, in which this is said: "But aside from that it affirmatively appears from the declaration that the plaintiff had leased the property to Bear from the 1st day of October, 1920, but it does not appear that he covenanted or agreed in that lease to put Bear in possession. Under these circumstances while the law will imply a covenant to protect a tenant against a paramount title or against anyone claiming under the lessor, it will not imply a covenant to protect the lessee against a stranger or a mere trespasser wrongfully in possession of the property, such as a tenant holding over after the expiration of his term, but as to such wrongdoer it remits the lessee to the assertion and establishment in the proper forum of the title and right of possession granted to him under the lease. The rule as thus stated is not universally approved, but it is, we think, supported by the weight of authority, and has been accepted by this court."

Mr. Freeman supports the American rule with a calm cogency which should be convincing. He summarizes this conclusion thus: "The gist of the reason advanced in favor of the English rule is that under the American rule, in case the demised premises are in the possession of a person wrongfully holding over or of some trespasser at the beginning of the tenant's term, and the tenant is forced to resort to litigation to oust the one in such possession, all he obtains by his lease is a chance for a lawsuit. It is conceded that under the

English rule it becomes the duty of the tenant to maintain his possession at his own expense after once being placed in possession. It is also conceded that if the premises are withheld by the landlord, or someone holding a paramount title, that the tenant has a right of recovery against the landlord for a breach of his covenant of quiet possession. It must be conceded also that if the premises are withheld from the possession of the tenant by reason of the wrongful act of a trespasser or of some former tenant who wrongfully holds over, the tenant has a right to recover his damages from such person. In other words, the tenant is protected, no matter in what manner the possession is withheld from him. It is, of course, true that the tenant will suffer delay in obtaining possession if he is forced to sue for it, but so would the landlord under the same circumstances. It is not, we believe, customary for a person who contracts in respect to any subject to insure the other party against lawsuits. Indeed, both the landlord and tenant have a right to presume that a former tenant will vacate at the end of his term, and that no one will unlawfully prevent the new tenant from going into possession. To sue or be sued is a privilege or misfortune which may occur to anyone. We believe that the American, or New York rule as it is sometimes called, under which it is held that there is no implied covenant that the premises shall be open to entry by the tenant at the time fixed for the beginning of the term, but merely that the tenant shall have a right to the possession at that time is more in accord with substantial justice to both the landlord and tenant, and in accordance with the general course of business dealings in respect to insurance against the chances of a lawsuit in a court of justice."

There are some underlying fundamental con-

siderations. Any written lease, for a specific term, signed by the lessor and delivered is like a deed signed, sealed and delivered by the grantor. This lease for fifteen years is, and is required to be, by deed. It is a conveyance. During the term the tenant is substantially the owner of the property, having the right of possession, dominion and control over it. Certainly, as a general rule, the lessee must protect himself against trespassers or other wrongdoers who disturb his possession. It is conceded by those who favor the English rule, that should the possession of the tenant be wrongfully disturbed the second day of the term, or after he has once taken possession, then there is no implied covenant on the part of his landlord to protect him from the torts of others. The English rule seems to have been applied only where the possession is disturbed on the first day, or perhaps more fairly expressed, where the tenant is prevented from taking possession on the first day of his term; but what is the substantial difference between invading the lessee's right of possession on the first or a later day? To apply the English rule you must imply a covenant on the part of the landlord to protect the tenant from the tort of another, though he has entered into no such covenant. This seems to be a unique exception, an exception which stands alone in implying a contract of insurance on the part of the lessor to save his tenant from all the consequences of the flagrant wrong of another person. Such an obligation is so unusual and the prevention of such a tort so impossible as to make it certain, we think, that it should always rest upon an express contract.

For the reasons which have been so well stated by those who have enforced the American rule, our judgment is that there is no error in the judgment complained of.

We are strengthened in this view by the only expression which we know of in this jurisdiction.

In *McGhee* v. *Cox*, 116 Va. 723, 82 S. E. 701, Ann. Cases 1916 E, 843, this is said: "The general rule is that a lease becomes complete and takes effect upon its execution, unless otherwise specifically provided, and entry by the lessee is not necessary to give it effect. The plaintiffs were not bound to put the defendants into actual possession of the leased premises. They were only bound to put them into legal or constructive possession—that is, to have the premises open to entry without any obstacle in the form of a superior right to prevent the defendants from obtaining actual possession. 24 Cyc. 1049-50; Taylor on Landlord and Tenant, sections 86 and 15; *Gardner* v. *Keteltas*, 3 Hill (N.Y.) 330, 38 Am. Dec. 637."

While doubtless this precise question was not directly in issue in that case, the language is nevertheless clear and pertinent. It is the restrained expression of a learned and careful judge (Buchanan), who was not given to thoughtless words or to the common judicial vice of writing overmuch. The case of *Forbes* v. *Wyatt*, 143 Va. 802, 129 S. E. 491, in which there was a recovery is not out of harmony because there the lessor expressly agreed to deliver possession and made inconsistent leases.

We are confirmed in our view by the Virginia statute, providing a summary remedy for unlawful entry or detainer, Code, section 5445, *et seq.* The adequate, simple and summary remedy for the correction of such a wrong provided by the statute was clearly available to this plaintiff. It specifically provides that it shall lie for one entitled to possession "in any case in which a tenant shall detain the possession of land after his right has expired without the consent of him who is entitled to possession."

Certainly there should be co-operation between the lessor and the lessee to impose the resulting loss upon such a trespasser, but whatever other equities may have arisen, when the plaintiff found that the premises which he had leased were occupied by a wrongdoer who unlawfully refused to surrender possession, it is manifest that he, the lessee, Hannan, had the right to oust the wrongdoer under this statute. His failure to pursue that remedy is not explained. Some of its consequences to him, however, are quite clearly indicated in the case of *Huntington Easy Payment Co.* v. *Parsons,* 62 W. Va. 26, 57 S. E. 253, 125 Am. St. Rep. 954, in which this is said in a case where a landlord was clearly at fault because he had not given the required legal notice to the previous tenant: "But the measure of damages in such a case, the amount of the recovery, is quite another matter. Equitable considerations enter into it, although the right of recovery is founded on the law and the remedy is a legal one. The amount to be recovered must be proportionate to the extent of the injury, and when the injured party has failed or refused to lessen his injury by such prudent action and reasonable exertion as were in his power, recovery will be denied to him to the extent of his failure of duty. This is a general rule, applicable when the circumstances warrant it, on the adjustment of a great many classes of demands. Sutherland on Damages, section 88. This author says: 'The law imposes upon a party injured by another's breach of contract or tort the active duty of using all ordinary care and making all reasonable exertions to render the injury as light as possible. If by his negligence or wilfulness he allows the damage to be unnecessarily enhanced, the increased loss, that which was avoidable by the performance of his duty, falls upon him.' It is

applicable between vendor and vendee and lessor and lessee. Sutherland on Damages, sections 89, 90. This court recognizes and enforces the principle: *Griffith* v. *Blackwater Boom & Lumber Co.*, 55 W. Va. 604, 48 S. E. 442, 69 L. R. A. 124; *Hurxthall* v. *St. Lawrence Boom Co.*, 53 W. Va. 87, 97 Am. St. Rep. 954, 44 S. E. 520. There are some exceptions to and qualifications of the rule, but it operates in the determination of the amount of the recovery for general damages for breach of contract of lease. *Adair* v. *Bogle*, 20 Iowa 238, the opinion in which was written by Judge Dillon, and is quoted with approval by this court in *Fobretch* v. *Marling's Admr.*, 29 W. Va. 765, 2 S. E. 827, cited. This eminent jurist said: 'Two principles should, in cases like the present, be impressed upon juries: 1. The plaintiff should recover only such damages as have directly and necessarily been occasioned by the defendant's wrongful act or default; and, 2. That if the plaintiff by reasonable exertions or care on his part could have prevented such damages, he is bound to do so; and so far as he could have thus prevented them, he cannot recover therefor. The injured party is entitled to recover only such sums as will make him whole. This he is entitled to recover, so far as his injury has been the direct or natural cause of the wrongful act of the other party.''

In construing the unlawful detainer statute, it is held, in *Hobday* v. *Kane*, 114 Va. 398, 76 S, E. 902, that where a landlord sells and conveys to a purchaser land in the possession of a tenant of the landlord, and the tenant refuses to surrender possession, the grantee is the proper person to bring unlawful detainer to recover possession of the land. Certainly then, under the facts shown in this declaration, the plaintiff, lessee, was the person entitled to the possession and the proper person to sue the trespasser.

 This is said in 16 R. C. L., section 106, page 625: "The right of action for injury to the possession during the term of the lease belongs exclusively to the lessee, whether he retains the possession or not, because he has exclusive right of possession." *Walden* v. *Conn*, 84 Ky. 312, 1 S. W. 537, 4 A. S. R. 204.

The plaintiff alleges in his declaration as one of the grounds for his action that the defendant suffered the wrongdoer to remain in possession, but the allegations show that he it was who declined to assert his remedy against the wrongdoer, and so he it was who permitted the wrongdoer to retain the possession. Just why he valued his legal right to the possession so lightly as not to assert it in the effective way open to him does not appear. Whatever ethical duty in good conscience may possibly have rested upon the defendant, the duty to oust the wrongdoer by the summary remedy provided by the unlawful detainer statute clearly rested upon the plaintiff. The law helps those who help themselves, generally aids the vigilant, but rarely the sleeping, and never the acquiescent.

*Affirmed.*

EPES, J., concurring: I concur in the conclusions reached by the chief justice in the opinion in this case, because of the fact that under the provisions of the law of Virginia (Code, section 5445, etc.), a lessor, having made a lease to take effect immediately upon termination of an expiring lease, appears to have been left without power or process to himself evict a tenant under the expiring lease, who tortiously holds over on the day succeeding the termination of his lease, and therefore the power to evict being denied by law to the lessor, no covenant to put the new tenant into possession should or can be properly implied.

But I am further of the opinion that what is stated to be the English rule in the opinion of the chief justice is the law under the common law, and that in the absence of a statute which by express provision or necessary implication changes this common law, it is the law of Virginia on the subject. If at any time the statutes of Virginia be so amended as to permit the lessor after the moment of the expiration of the prior lease to evict his tenant tortiously holding over under the expiring lease, I am of opinion that the English rule, the rule of the common law, will again become the law of the land in Virginia.