49 N.J. Super. 242 (1958)
139 A.2d 430
LORIA'S GARAGE, INC., A CORPORATION OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
L.E. SMITH, CHRISTIAN AND MIDDLE NAME UNKNOWN, HUSBAND OF NANCY SMITH AND NANCY L. SMITH, HIS WIFE, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued February 10, 1958.
Decided March 10, 1958.
*244 Before Judges FREUND and CONFORD.
Mr. Frank B. Bozza argued the cause for plaintiff-appellant.
Mr. J. Bernard Johnson argued the cause for defendants-respondents (Messrs. Johnson and Johnson, attorneys).
The opinion of the court was delivered by FREUND, J.A.D.
The plaintiff is the assignee of a written lease of certain premises designated as 61-69 Main Street, and also "1100 feet" of the rear portion of a one-story building at 55 Main Street, both in East Orange. (The lease refers to "1100 feet" but it is apparent that the meaning is "1100 square feet"). The complaint, in two counts, seeks (1) a declaratory judgment that plaintiff is a tenant under that lease and not a month-to-month tenant as claimed by defendants, and (2) possession of the portion of the demised premises at 55 Main Street claimed to have been unlawfully usurped and controlled by the defendants, as well as damages for defendants' failure to deliver possession thereof to the plaintiff. The trial judge held for the plaintiff on the first count as a matter of law and submitted the second count to the jury on the issue of whether or not the plaintiff or its assignors had any rights under the lease *245 to possession of the 1100 square feet in the rear of 55 Main Street. The jury returned a verdict of no cause of action on the second count. We are concerned on this appeal only with that count.
The plaintiff's assignors, Louis Morachnick and John Kistner, individually and trading as Sterling Auto Sales, were the lessees under the lease entered into on April 1, 1952. The assignment by which the plaintiff is now in possession of 61-69 Main Street was dated March 29, 1954. The defendants have accepted the rent specified in the lease from the plaintiff for each month since the date of the assignment until at least the date of the trial. However, because the defendants refused to recognize the plaintiff as holding by assignment under the lease, but only as a monthly tenant, this suit was instituted.
The lease of April 1, 1952 covered 61-69 Main Street and 55 Main Street, to be used for the business of dealing in used cars. Mr. Morachnick, one of the original lessees under a prior lease in 1947 covering the same premises and an assignor under the 1952 lease, testified, over the objection of plaintiff's counsel, that although the 55 Main Street property was demised by the lease as follows:
"Also eleven hundred feet (1100') of the rear portion of a 1-story brick and cement block building in the rear of and near or adjacent to a gasoline station located on a tract commonly known as 55 Main Street, East Orange, New Jersey, with entrance through Sterling Street in East Orange, Essex County, New Jersey."
it was not intended that it actually be included as part of the leased premises, but was included in the 1947 lease in order that the lessee might comply with N.J.S.A. 39:10-19 requiring a used car business, as a prerequisite to obtaining a license, to have at least 1000 square feet of enclosed floor space. (The statutory provision has since been declared unconstitutional in New Jersey Used Car Trade Ass'n. v. Magee, 1 N.J. Super. 371 (Ch. Div. 1948)).
There was no objection to other similar testimony by defendant L.E. Smith, who was asked upon cross-examination *246 why the provision relating to 55 Main Street was not stricken in the 1952 lease, since the law requiring it at the time of the 1947 lease was no longer in effect, and particularly in view of the fact that Smith had previously stated that Marachnick had told Mr. Loria, president of the plaintiff corporation, "that the lease * * * consisted only of 61-69 Main Street, * * *." His answer was "Because I didn't think it was necessary. We talked to Mr. Loria and we explained it to him and Mr. Loria agreed to buy only the business consisting of 61-69 Main Street. That was the agreement between Mr. Loria and myself and Mr. Morachnick."
Smith further testified that the premises at 55 Main Street had been continuously occupied by tenants other than the lessees of 61-69 Main Street from 1947 to the present time. His testimony in this respect was corroborated at least in part by that of Mrs. Grant who was the lessee of 55 Main Street in the years 1947 and 1948 and who indicated that at that time she had no interest in 61-69 Main Street.
There was conflicting testimony on the question of efforts made by the plaintiff to secure possession of the disputed 1100-square-foot area. However, the first written evidence concerning plaintiff's demand for possession of the area is a letter on the stationery of Loria's Garage, Inc., dated April 15, 1955, which was slightly more than a year after the date of the assignment of the lease and also after the yearly renewal in writing on April 1, 1955 pursuant to the lease. There were also introduced in evidence rent checks used in payment by Loria's Garage which had incorporated thereon the following notation: "Rent of 61-69 Main Street."
The issue on this set of facts concerning the second count was submitted to the jury. The trial judge, in explaining the law, stated in part the following with regard to the construction of the lease in question:
"Now, members of the jury, the cardinal rule in the interpretation of contracts is to ascertain and give effect to the common intention of the parties so far as it may be effectuated without infringing *247 legal principles. But where the parties have made a memorial of their bargain or a writing is required by law, their actual intent, unless expressed in some way in the writing, is ineffective except when it may afford the basis for a re-formation of the writing. It is not the real intent but the intent expressed or apparent in the writing that controls.
Of course we know the intentions of the parties in this case, which was that the 1100 feet was merely incorporated for the purposes I have spoken to you about. [Emphasis added]
So that where general or indefinite terms are employed in the agreement, the Court may look into the attending circumstances and avail itself of such light as they may afford in ascertaining the true meaning of the language. Such an inquiry is not for the purpose of changing the writing, but to secure light by which to ascertain its actual significance and the interpretation of the contract given by the parties as shown by their conduct, such as their acts in partial performance, will be inquired into by the Court and the jury.

* * * * * * * *
So you see, ladies and gentlemen of the jury, the problem that confronts you. You have to find where the truth lies in this case. Did Mr. Loria understand at the time that he made the sublease that he was not to enjoy the use of 55 Main Street?"
It must be noted that it was agreed by counsel at the argument that the word "intentions" in the first line of the second paragraph of the foregoing excerpt is a stenographic error and should be read as "contention."
The remaining portion of the charge dealt with the issues of waiver and damages. At the conclusion of the charge, counsel for the plaintiff indicated his objection to a portion thereof as follows:
"I take exception to that part of your Honor's charge dealing with intent. Your Honor's statement implied that there might be a doubt as to the writing itself. There was no such doubt in the lease itself."
It is our opinion that any testimony concerning the verbal negotiations between the defendant, L.E. Smith, and his original lessees, Morachnick and Kistner, or between them and plaintiff, intended to show that although the written terms of the lease included the 1100-square foot portion of the premises known as 55 Main Street, the latter premises were not to be used by the lessee but were included for *248 some other purpose, falls directly within the prohibition of what is denominated the "parol evidence rule." Such proof was nothing more than an attempt to alter or vary the terms of the lease by contemporaneous or prior oral negotiations or agreements as evidenced by parol testimony. Such testimony is not admissible to vary or add to the terms of the written complete memorial of the transaction. Ross v. Orr, 3 N.J. 277, 282 (1949); Schlossman's, Inc., v. Radcliffe, 3 N.J. 430, 434 (1950); Naumberg v. Young, 44 N.J.L. 331, 339 (Sup. Ct. 1882); 3 Corbin, Contracts (1950), § 573, pp. 214 et seq.
Nor does the fact that we are here concerned with a third-party assignee of the written agreement change the effect of the rule. If an agreement is completely integrated, the same principles apply and the written instrument is just as invulnerable to parol testimony as against strangers and privies as it is between the immediate parties. Atlantic Northern Airlines, Inc., v. Schwimmer, 12 N.J. 293, 301 (1953); First National Bank v. Dunn, 55 N.J.L. 404 (Sup. Ct. 1893); 3 Corbin, op. cit., supra, § 596, p. 347. See also 3 Williston, Contracts (rev. ed. 1936), § 647, p. 1869, n. 13.
We do not agree with the statement of the trial judge in his charge that "general and indefinite" terms were used in the agreement, thereby permitting the court to look into the attending circumstances to ascertain the true meaning of the language, and that such inquiry was not for the purpose of changing the writing but only to ascertain its actual significance. We think the lease was clear and unambiguous in respect to the premises demised hereunder.
It is argued that the testimony in question is nevertheless admissible as bearing upon the issue of waiver by the plaintiff of any right to possession of the premises at 55 Main Street under the lease. It is a general rule of law that "if the benefit of a provision in a contract is waived compliance therewith is excused and the party waiving it cannot thereafter insist on its performance." Van Dusen Aircraft Supplies, Inc., v. Terminal Const. Corp., 3 N.J. *249 321, 326 (1949); Wilson v. Renner, 85 N.J.L. 340 (E. & A. 1913). Specifically, with regard to the question of the waiver of the implied undertaking that the premises shall be open to the lessee's entry legally and actually when the time for possession under the lease arrives, Adrian v. Rabinowitz, 116 N.J.L. 586, 589 (Sup. Ct. 1936), the rule regarding waiver is equally applicable. Rieger v. Welles, 110 Mo. App. 166, 84 S.W. 1136 (Ct. App. 1903); Browder-Manget Co. v. Edmondson, 7 Ga. App. 843, 68 S.E. 453 (Ct. App. 1910); 3 Thompson, Real Property (1940), § 1472, p. 724; 32 Am. Jur., Landlord and Tenant, § 189, p. 179, n. 4; 51 C.J.S. Landlord and Tenant § 312, p. 972. Cf. Robinson v. Boys, 61 N.J.L. 179, 187, 188 (Sup. Ct. 1897); Plassmeyer v. Brenta, 24 N.J. Super. 322, 329 (App. Div. 1953); Donmart Motors v. Pub. Serv. Elec. and Gas Co., 27 N.J. Super. 427, 431 (App. Div. 1953), certification denied 14 N.J. 349 (1954).
We have then a classical situation in which the testimony, inadmissible by reason of the "parol evidence rule," is admissible as being relevant and material to the issue of waiver. Cf. Perry v. Levy, 87 N.J.L. 670, 672 (E. & A. 1915); Rynar v. Lincoln Transit Co., Inc., 129 N.J.L. 525, 528 (E. & A. 1942); Millman v. U.S. Mortgage, &c., Title Guaranty Co., 121 N.J.L. 28, 34, 35 (Sup. Ct. 1948). Professor McCormick states the following with regard to this procedural problem in evidence law:
"An item of evidence may be logically relevant in several aspects, as leading to distinct inferences or as bearing upon different issues. For one of these purposes it may be competent, but for another incompetent. In this frequently arising situation, the normal practice is to admit the evidence. The interest of the adversary is to be protected, not by an objection to its admission, but by a request at the time of the offer for an instruction that the jury is to consider the evidence only for the allowable purpose. Such an instruction may not always be effective, but admission of the evidence with the limiting instruction is normally the best available reconciliation of the respective interests. It seems, however, that in extreme situations where the danger of the jury's misuse of the evidence for the incompetent purpose is great, and its value for legitimate purpose is slight or the purpose for which it is competent can readily be *250 proved by other evidence, the judge's power to exclude the evidence altogether would be recognized." McCormick, Evidence (1954), § 59, pp. 135-136.
In the instant case, the testimony concerning the negotiations and verbal statements made between the defendant Smith and original lessee, Morachnick (plaintiff's assignor), and the parol evidence of the transactions between the president of the plaintiff corporation and defendant was admissible as corroboration of the other acts of waiver relied upon as a defense to the action on the second count, even though it is otherwise inadmissible to vary the terms of the written lease. Were we considering this problem in the abstract, our result would necessarily be that the plaintiff's appeal challenging the admissibility of this evidence would fail. However, we are bound to consider this problem in view of the factual disposition attending the circumstances of the receipt of this parol testimony into evidence and the emphasis placed thereon by that portion of the charge to the jury objected to, as we have indicated.
In the light of what was said in the charge, quoted above, the jury may well have believed that the defendant was entitled to a verdict, entirely apart from the matter of waiver, if they concluded from conflicting evidence that the parties intended by the lease not to include the 1100 square foot area. Therefore, to allow this verdict to stand upon this equally probable basis (as compared to the defense of waiver) would under the circumstances constitute a denial of substantial justice. R.R. 1:5-3(b). In this posture of the case, the admission of the evidence was materially prejudicial to the plaintiff.
It is suggested that in a situation of this kind it would be appropriate to follow the rule discussed by Professor McCormick and stated in Perry v. Levy, supra (87 N.J.L. at p. 672):
"The trial judge should have been requested by the defendant to charge a cautionary instruction, limiting its consideration by the jury to such a purpose. Evidence, legal for one purpose, cannot be excluded because the jury may erroneously use it for another purpose. *251 The court on request will always guard against such an error, or, if not, a party aggrieved may take his exception. Trenton Passenger Railway Co. v. Cooper, 60 N.J.L. 219; Hill v. Maxwell, 77 Id. 766."
The Millman case, supra (121 N.J.L., at p. 35), states the issue similarly:
"To obviate the risk of a prejudicial use of testimony admissible for one purpose but not for another, the trial judge is obliged, by an instruction, if a specific request is made, to limit its application to the issue upon which it legally bears. (Cases omitted.)"
Our examination of the record fails to disclose such an appropriate request and therefore ordinarily the plaintiff's appeal concerning the treatment of the testimony by the trial judge would be without merit. However, in the light of the record before us, we consider that substantial justice requires reversal and a remand. The trial court misconceived the only legally permissible use of the proffered testimony, and its error in that regard was not cured by its submission of the defense of waiver as an issue to be determined by the jury.
Reversed and remanded for trial de novo.